139 N.J. Super. 213 (1976)
353 A.2d 144
PHYLLIS BLITT, PLAINTIFF,
v.
JOSEPH BLITT, DEFENDANT.
Superior Court of New Jersey, Chancery Division (Matrimonial).
Decided January 22, 1976.
*215 Mr. Robert M. Wood for plaintiff (Messrs. Meth, Wood, Neff & Cooper, attorneys).
Mr. James C. Orr for defendant (Messrs. Lum, Biunno & Tompkins, attorneys).
GRIFFIN, J.C.C., Temporarily Assigned.
One of the issues to be resolved in this divorce action is whether the accumulated earnings in defendant husband's noncontributory pension and profit sharing plans with George S. McLaughlin Associates, Inc., are subject to equitable distribution between the parties pursuant to N.J.S.A. 2A:34-23. Although this subject has been considered quite recently in Pellegrino v. Pellegrino, 134 N.J. Super. 512 (App. Div. 1975), and White v. White, 136 N.J. Super. 552 (App. Div. 1975), there remains some confusion whether the type of the plan, i.e., contributory or noncontributory, is the determinative factor of equitable distribution. Since copies of the relevant plans were not introduced into evidence at the trial, counsel have submitted them at the court's request as a joint exhibit.[1]
N.J.S.A. 2A:34-23 provides in part that:
In all [divorce] actions * * * the court may make such award or awards * * * to effectuate an equitable distribution of property, both real and personal, which was legally and beneficially acquired by them or either of them during the marriage.
*216 Has the defendant "acquired," within the meaning of the statute, the funds currently held in trust for him under the plan?
The Supreme Court gave extensive consideration to this part of the statute in Painter v. Painter, 65 N.J. 196 (1974), where it held that "all property, regardless of its source * * * shall be eligible for distribution in the event of divorce." 65 N.J. at 217; [emphasis in original]. Interpreting the word "acquired" the court wrote:
* * * We think the Legislature used the word in a more comprehensive sense to include not only property title to which is the direct or indirect result of an expenditure of effort on the part of a spouse, but also, assets, title to which is received by gift or inheritance, or indeed any other way. [at 215, emphasis supplied]
The only conclusion which can be drawn from this language is that the word "acquired" should be given a broad inclusive meaning rather than a narrow one.
Some courts have utilized the concept of "vesting" to determine whether a person has "acquired" property. Pellegrino v. Pellegrino, supra; Tucker v. Tucker, 121 N.J. Super. 539 (Ch. Div. 1972). However, this was specifically disapproved of in Stern v. Stern, 66 N.J. 340, 348 (1975), as being "in no way relevant" to equitable distribution.
In light of the holdings in Painter and Stern, the problem facing this court is one of statutory interpretation. Where should the line be drawn? On one side is property which, although not without value, constitutes an expectation of receipt of benefits or is subject to a contingency. Tucker v. Tucker, supra; Williamson v. Williamson, 203 Cal. App.2d 8, 21 Cal. Rptr. 164 (D. Ct. App. 1962); White v. White, supra. On the other side of that line is property which, although not cash in hand, is not subject to a contingency, has a reasonably discernible value, and awaits but the decision of the owner to take actual possession. Pellegrino v. Pellegrino, supra; See v. See, 64 Cal.2d 778, 51 Cal. Rptr. 888, 415 P.2d 776 (Sup. Ct. 1966); Angott v. Angott, 462 *217 S.W.2d 73 (Tex. Civ. App. 1970). An analogy could be drawn at this point to the principle of constructive receipt of income under our income tax laws, although clearly whether such property is taxable is not controlling on the question of distribution. See Internal Revenue Code, 1954, § 451, and Internal Revenue Code Regulations, § 1.451-2. Property which falls in this latter category has been "acquired" by the parties and should be subject to equitable distribution.
Both parties agree that defendant's company has contributed $49,000 to the plan on his behalf while defendant himself has made no voluntary contributions. Furthermore, there is no disagreement that under the rules of the plan 50% of this amount ($24,500) had vested (a term used within the plan itself) as of the date the complaint was filed. Distributions under the plan are governed by Article 5 and may occur upon any of four events: retirement, disability, death, and finally (§ 5.02D), separation for other reasons. This section states in part:
* * * a Participant shall be entitled to distribution of his respective vested interest * * * standing in the account of such Participant determined as of the valuation date coinciding with or immediately preceding the date of such separation. Such distribution shall be in a lump sum or in installments over a period not exceeding 15 years as the Committee in its sole discretion may determine.
Thus, defendant had an absolute right to $24,500 as of the date the complaint was filed. This plan, despite its noncontributory aspect, is quite similar to the plan considered in Pellegrino v. Pellegrino, supra, which specified that "These monies are returnable to the member should he resign or be dismissed prior to qualifying for a benefit." 134 N.J. Super. at 513-514. Under both plans a termination of employment is required prior to realization. Simply because the manner of payment under defendant's plan is controlled by the committee does not lead to the conclusion that property has not been "acquired" within the meaning of the statute. I therefore find that under Pellegrino v. Pellegrino, *218 supra, $24,500 of the monies held in trust under defendant's profit sharing and pension plan is subject to equitable distribution.
Defendant would distinguish Pellegrino since that case dealt with employee contributions, whereas the present case concerns contributions by the company. That distinction, however, is not controlling. The Pellegrino court wrote:
Under the above cited [pension] statute, defendant * * * has the absolute right to the repayment of his contributions either directly or as part of his retirement benefits * * *. Thus, since defendant has a present fixed right to the future enjoyment of the contributions paid by him, even though the date of that enjoyment be uncertain, his interest therein is vested. [134 N.J. Super. 515]
Hence, it is quite clear that the propriety of subjecting the proceeds of the plan to distribution was based not on the source of the contribution but rather the nature of the interest and defendant's control over it. This interpretation is consistent with the Supreme Court's edict on equitable distribution in Painter v. Painter, supra. In White v. White, supra, the Appellate Division affirmed a decision by the Chancery Division denying distribution of a noncontributory plan. The court stated, "Plaintiff made no contribution to the plan and consequently had no right of withdrawal." 136 N.J. Super. at 553. The gist of this decision plainly rests in the party's control over the property, not its source. Furthermore, notwithstanding the source of these funds, this court takes judicial notice of the fact that lucrative profit sharing and pension plans are realistically wage substitutes, expecially where the employee's ordinary compensation falls into the upper tax brackets. Evid. R. 9. That this is a proper consideration can be gleaned from the comment by the court in Scherzer v. Scherzer, 136 N.J. Super. 397 (App. Div. 1975):
The judge should also consider on remand defendant's interest in the corporate pension trust fund to determine whether that interest stems from a deferral of current compensation which otherwise would have augmented the marital estate or the parties' standard of living.
*219 In short, the portion of a pension plan, whether contributory or noncontributory, acquired during marriage and over which an employee has complete control, even though enjoyment may be postponed, should be an asset subject to equitable distribution. The postponement of enjoyment should be considered in determining the manner in, and the time at which, this portion of the plan is divided.
Defendant argues that distribution should be denied since it will have a bearing on his ability to make support payments in the future. Obviously, it would be considered in any future modification.
The only remaining questions concern the amount and manner of distribution. After considering the other property acquired during the marriage and divided between the parties, plaintiff is entitled to 50% of the proceeds vested under the plan as of the date of the complaint. Although the briefs express some disagreement on the manner of distribution, counsel for plaintiff on summation stated that she sought distribution of defendant's interest in the plan when he receives it. This seems fair. In this case there is no simple way of liquidating the asset. Therefore, this 50% interest, which represents $12,250, shall be set aside until normal distribution to defendant commences, and shall participate in all gains and losses of the plan. Upon distribution, whether it be in one lump sum or multiple payments, plaintiff shall be entitled to that portion of the proceeds that this amount bears to the then entire amount in the plan.
NOTES
[1] For the purposes of this decision, the relevant provisions of both plans are identical so they shall be referred to as "the plan."