149 N.J. Super. 188 (1977)
373 A.2d 664
SANDRA J. MEY, PLAINTIFF-RESPONDENT,
v.
KARL R. MEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted October 26, 1976.
Decided April 13, 1977.
*189 Before Judges MATTHEWS, SEIDMAN and HORN.
Messrs. Cahill, McCarthy and Hicks, attorneys for appellant (Mr. Gordon C. Strauss on the brief).
Messrs. Mason, Griffin & Pierson, attorneys for respondent (Ms. Barbara Ulrichsen on the brief).
The opinion of the majority was delivered by HORN, J.A.D.
Defendant Karl R. Mey appeals from an order supplementing a judgment of divorce. The principal issue is the eligibility for equitable distribution of corpus which became available to defendant husband during marriage as a beneficiary under a testamentary trust created before the marriage. N.J.S.A. 2A:34-23. A secondary issue is, assuming said corpus is eligible, whether the trial judge erred in the manner of distributing the assets between the parties.
Defendant was the beneficiary of a testamentary trust created under the will of his grandfather, who died in 1960 when defendant was 12 years old. The corpus of the trust was a farm consisting of approximately 47 acres on which defendant, his mother and his brother and sister resided. *190 Defendant's mother was designated as trustee. Under the terms of the will the property or the proceeds of the sale thereof was to be held in four separate trusts for the benefit of each of the three children, all of whom were then minors, and their mother. Discretion was given to the trustee to invade the corpus in order to make advances for the care, support, maintenance and education of the beneficiaries. She was also directed to accumulate the income for herself, individually and as guardian of her children, and to apply so much of it as might be necessary for the same purposes.
The will further provided that as each child attained the age of 21 the accumulated income from such child's share of the trust would be paid over, and such child would then continue to receive the income until attaining the age of 25, at which time such child's share of the principal would be distributed to him or her. However, if any child should die before attaining the age of 25, his or her share was to be distributed per stirpes to such issue as might then be living, or, if none was living, should be divided equally among the beneficiaries of the other trusts. Upon distribution to the youngest child, the mother would then be entitled to take the share of the trust estate assigned to her.
Shortly before his marriage defendant had become 21 and had been paid approximately $40,000 in accumulated income. He continued to receive income from his share of the trust until he reached the age of 25 in October 1972, at which time he was married. Prior to that time he was not entitled to receive his share of the corpus.
The parties were married on November 16, 1968. They had no children. On September 24, 1974 plaintiff wife filed a complaint for divorce on the ground of extreme cruelty. The divorce judgment, which included a distribution of marital assets, was entered on March 25, 1975. Subsequently on July 8, 1975, an order was entered vacating "[a]ll elements of the judgment heretofore entered in the *191 matter * * * with the exception of the dissolution of the marriage and the award of counsel fees * * *," giving exclusive possession of the former marital residence to plaintiff and further ordering that following discovery the parties were to be afforded a plenary hearing as to the issue of equitable distribution.
After the hearing pursuant to said order the judge determined that the corpus received by defendant was eligible for equitable distribution. He held that the control date for equitable distribution is "the date that the person is entitled to receive whatever is left to him." Defendant appeals from the order, which, reflecting the trial judge's views, required defendant to pay to plaintiff the sum of $20,000.
The principal issue is novel. The "equitable distribution" statute is comparatively new and the law construing it is still developing. The pertinent language of the last paragraph of the statute is:
* * * [T]he court may make such award or awards to the parties, in addition to alimony and maintenance, to effectuate an equitable distribution of the property, both real and personal, which was legally and beneficially acquired by them or either of them during the marriage. [Emphasis supplied]
Defendant contends that, contrary to the trial judge's determination, he acquired the property, that is, the subject proceeds of the corpus, before his marriage. The acquisition, he says, occurred when his grandfather died and his trust estate came into being; that from that time he became entitled to, i.e., "acquired," an "interest" in the estate which was merely held for him until he reached age 25, at which time he "happened to be married." He relies particularly on Painter v. Painter, 65 N.J. 196 (1974), wherein Justice Mountain, speaking for the court, said (at 217) that "all property, regardless of its source, in which a spouse acquires an interest during the marriage shall be eligible for distribution * * *."
*192 Thus, he argues that it follows that in a case such as the instant one, where defendant's interest in the corpus vested upon his ancestor's death, he acquired that interest before he was married and therefore it was exempt.[1] We do not agree.
As we view Painter, the quoted phrase was written in the context of a discussion of whether any spousal assets were to be excluded by reason of their source, i.e., earned as against gift or other sources. That part of the discussion concentrated on the meaning of the word "acquired." It did not include the meaning of the phrase "legally and beneficially" in connection with the word "acquired." Justice Mountain expressed the court's realization that the "general governing rules" set forth in the opinion would not provide all the answers to the myriad of problems which could be anticipated. So "[i]ndividual problems must be solved, as they arise, within the context of particular cases." Painter, supra, n. 7 at 218.
As will be noted, other cases following Painter were concerned with the meaning of "legally and beneficially." We find that generally their interpretations accord with our own view of the meaning and intent of that phrase.
It is settled that the concept of vesting of property interests is "clearly in no way relevant to the question of effecting an equitable distribution * * *." Stern v. Stern, 66 N.J. 340, 348 (1975). The court, however, intimated that not all "future interests may qualify as `property' within the meaning of N.J.S.A. 2A:34-23." Id. at 349. This constituted a recognition by the court that not all "property" was eligible. The court's language suggests to us that what property was eligible depended purely on *193 whether it qualified as such within the phrase "legally and beneficially acquired."
We cannot treat "legally and beneficially" as surplusage. If it were, concededly all property, regardless of whether it was legally and beneficially acquired, would be considered as "acquired" when a spouse became entitled to an interest  as is contended here by defendant. "Property" projects broad forms of ownership. As stated by defendant, "it is obvious that many different forms of ownership are included [within the meaning of the word], such as absolute ownership, beneficial ownership, defeasible ownership, joint ownership, ownership subject to a reversion, etc."
N.J.S.A. 1:1-2 states that the enumerated words and phrases thereunder, when used in any statute,
[u]nless it be otherwise expressly provided or there is something in the subject or context repugnant to such construction * * * shall have the meaning herein given to them.

* * * * * * * *
Personal property. "Personal property" includes goods and chattels, rights and credits, moneys and effects, evidences of debt, choses in action and all written instruments by which any right to, interest in, or lien or encumbrance upon, property or any debt or financial obligation is created, acknowledged, evidenced, transferred, discharged or defeated, in whole or in part, and everything except real property as herein defined which may be the subject of ownership.

* * * * * * * *
Real estate; real property. The words "real estate" and "real property," include lands, tenements and hereditaments and all rights thereto and interests therein.
But we must give effect to the phrase "legally and beneficially." Webster's Third New International Dictionary (1971) defines "legal" as "conforming to or permitted by law." It defines "beneficial" as "receiving or entitling one to have or receive in one's own right and for one's benefit an advantage, use or benefit * * *." In the sense of these definitions we regard the phrase "legally and beneficially," as did the trial judge, to mean that the spouse acquires the property within the intention of N.J.S.A. *194 2A:34-23 when he or she acquires a title which carries with it the effective power to control or use or enjoy. Cf. Packard-Bamberger, etc. v. Oakland Boro. Council, 87 N.J. Super. 92 (App. Div. 1965).
We perceive no cogency in defendant's further argument that before the marriage date defendant might have sold his interest for an actuarially discounted price, "in which [event] the issue at hand would never have arisen since no distribution would have been made to the husband during the marriage." We are not called upon to deal with that situation. That he might have sold his interest is not equivalent to a right to use or enjoy the trust corpus.
Gauger v. Gauger, 132 N.J. Super. 89 (Ch. Div. 1975), aff'd 138 N.J. Super. 366 (App. Div. 1976), certif. granted 70 N.J. 524 (1976), contrary to defendant's belief, does not provide a "most compelling analogy" for his view. It provides additional support for the trial judge's ruling. That case held that real estate acquired as joint tenants by the husband and his mother in 1941, before the former's marriage, was not eligible for distribution under the statute although the mother died during the marriage.
The principal theme of defendant's argument that Gauger furnishes such analogy is that it demonstrates that although the husband's "future interest in his mother's joint interest could have been defeated, inter alia, by his prior death * * *," nevertheless the court held that he had acquired the property before the marriage. This argument overlooks the real basis for the decision, which is that the husband's right to the beneficial use of the jointly held property commenced with the grant to him and his mother, not with the death of his mother. Babbitt v. Day, 41 N.J. Eq. 392 (Ch. 1886); 48 C.J.S. Joint Tenancy § 7 at 930. The Appellate Division, in affirming, said: "The trial judge found for defendant since he concluded that defendant acquired his entire interest in the realty in 1941." 138 N.J. Super. at 367 (emphasis supplied).
*195 In Pellegrino v. Pellegrino, 134 N.J. Super. 512 (App. Div. 1975), the husband's contributive share in a pension fund was held to be eligible for allocation under the statute, since it was refundable to him "should he resign or be dismissed prior to qualifying for a benefit." He had the legal right to resign and to enjoy the use of the fund. Tucker v. Tucker, 121 N.J. Super. 539 (Ch. Div. 1972), was held to be factually inapposite because "[t]here the husband made no contributions to the private employer's incentive compensation and pension plan and consequently had no right of withdrawal before retirement." 134 N.J. Super. at 516. (emphasis supplied).
White v. White, 136 N.J. Super. 552 (App. Div. 1975), held that the husband's interest in a pension plan to which he "made no contribution * * * and consequently had no right of withdrawal" was not eligible. The plan in that case gave the husband the right to receive retirement income in the future, contingent upon either (1) becoming totally and permanently disabled, or (2) voluntarily terminating his employment (having attained the age of 40 and completed at least ten years of service), receiving a pension starting as early as age 55, or (3) retiring between the ages of 55 and 65.
Blitt v. Blitt, 139 N.J. Super. 213 (Ch. Div. 1976), involved a husband's noncontributory pension and profit-sharing plans, but considered as one plan by the court. The judge held that one-half of the full contribution to the plan which was made by the husband's employer was eligible, "had vested" (i.e., that "defendant had an absolute right to $24,500 as of the date the complaint was filed"), and "[t]his plan, despite its noncontributory aspect, is quite similar to the plan considered in Pellegrino v. Pellegrino, supra, which specified that `These moneys are returnable to the member should he resign or be dismissed prior to qualifying for a benefit.'" At 217.
We agree with the statement of the court in Blitt v. Blitt, in commenting upon the Pellegrino decision as follows:
*196 * * * Hence, it is quite clear that the propriety of subjecting the proceeds of the plan to distribution was based not on the source of the contribution but rather the nature of the interest and defendant's control over it. * * * [139 N.J. Super. at 218 emphasis supplied]
Kruger v. Kruger, 139 N.J. Super. 413 (App. Div. 1976), held retirement and disability benefits which the husband "has become irrevocably entitled to receive for the balance of his life constitute assets subject to equitable distribution to the extent that his entitlement thereto is based upon military service rendered during the existence of the marriage." At 420.
Likewise, stock options to which a husband was entitled as a corporate executive were held eligible for distribution on the basis that the stock options represent property which "although not cash in hand, is not subject to a contingency, has reasonably discernible value and awaits but the owner to take actual possession." Callahan v. Callahan, 142 N.J. Super. 325, 328 (Ch. Div. 1976).
Neither DiTolvo v. DiTolvo, 131 N.J. Super. 72 (App. Div. 1974), nor Hughes v. Hughes, 132 N.J. Super. 559 (Ch. Div. 1975), supports a different view. DiTolvo held that the proceeds of a husband's personal injury-negligence cause of action which arose during the marriage was subject to distribution. Hughes held similarly as to a worker's compensation claim.
The holdings in DiTolvo and Hughes were premised upon the accrual of the right to recovery during coverture and are consistent with a determination that in each case the causes of action are property legally and beneficially acquired during the marriage. Contrary to the situation in the case at bar, where defendant had no control over the corpus until he attained age 25, which was during the marriage, the husbands in DiTolvo and Hughes did have such control. The delay or passage of time in enforcing the claims is of no moment; such delay is mechanical, not caused by the nature *197 of the claim but by unrelated considerations. Ideally, personal injury claims, workers' compensation claims, contractual claims and all other asserted rights should be resolved without delay. But pragmatically the volume of work in our courts, required time for discovery, availability of attorneys, etc., do not permit of such speedy dispositions. Similarly, the liquidation of a partnership interest as in Stern v. Stern, supra, would also require delay for obvious reasons.
We conclude that defendant's share in the corpus of his grandfather's estate was not legally and beneficially acquired until he attained the age of 25. Since he was at that time married, the proceeds were eligible for equitable distribution.
We turn now to the secondary issue  whether the trial judge erred in the manner of distributing the assets. The judge directed that the division of the net assets amounting to $28,000 be $20,000 to plaintiff and the balance to defendant.
We have carefully reviewed the record and find that there was sufficient credible evidence to support the trial judge's findings and that the guidelines enunciated in Painter v. Painter, supra, were reasonably followed. State v. Johnson, 42 N.J. 146 (1964).
The judgment from which the appeal was taken is accordingly affirmed.
MATTHEWS, P.J.A.D. (concurring).
I agree substantially with Judge Horn's opinion and concur that the judgment below should be affirmed.
I think that the major source of difficulty each of us had in resolving this appeal is the somewhat sweeping language found in Painter v. Painter, 65 N.J. 196 (1974):
We therefore hold the legislative intent to be that all property, regardless of its source, in which a spouse acquires an interest during the marriage shall be eligible for distribution in the event of divorce. [at 217] *198 I do not believe that this paragraph should be read as literally as Judge Seidman apparently does, nor quite as freely as does Judge Horn.
I do not believe that anyone can dispute that plaintiff's interest in the trust res in question was "vested," Fidelity Union Trust Co. v. Rowland, 99 N.J. Eq. 72 (Ch. 1926), subject to defeasance by his death prior to attaining the age of 25. See, generally, 6 N.J. Practice Clapp, Wills and Administration, § 579; 2A Powell on Real Property, ¶ 332. The fact of vesting, however, is of no real consequence in resolving the issue presented. Indeed, contingent interests where the contingency goes to the event rather than the identity of the taker may be described as vested in the sense that it is transmissible or assignable. Van Dyke's adm'r. v. Vanderpool's adm'r., 14 N.J. Eq. 198 (Ch. 1862); Kahn v. Rockhill, 132 N.J. Eq. 188 (Ch. 1942); N.J.S.A. 46:3-7.
In my view, N.J.S.A. 2A:34-23 cannot be read to require that every interest in property acquired during a marriage by a party thereto is subject to equitable distribution. To so read the statute would be to ignore the words "legally and beneficially" used therein. For example, if a spouse should qualify as a trustee of a trust during his or her marriage, the legal interest held by the spouse in the corpus would not be subject to equitable distribution in the event of divorce; yet the spouse does have an "interest" in the property constituting the corpus. Again, assume that a spouse is named beneficiary of a trust to receive the income in such amounts as the trustee shall in his sole discretion deem necessary for the beneficiary's support; the availability of that beneficial interest for equitable distribution would be at best, highly doubtful. Compare Gardner v. O'Loughlin, 76 N.H. 481, 84 A. 935 (Sup. Ct. 1912), with Eaton v. Eaton, 82 N.H. 216, 132 A. 10 (Sup. Ct. 1926).
While I am not unmindful of the fact that there is no surer way to misread a statute than to read it literally, I cannot read the words "legally and beneficially" other than *199 in the conjunctive[1]  certainly not in the factual context presented here.
Defendant here was given a "vested" interest in his share of the farm trust on the death of his grandfather, the testator-settlor. He cannot, however, in my view, be said to have "acquired" the principal or corpus of the trust then. His acquisition of the corpus or principal came about when he became the legal and beneficial owner  on his twenty-fifth birthday; on that day he became entitled to the distribution of the corpus or principal by virtue of the elimination of the condition of defeasance  survival to age 25. Whereas at the time of his grandfather's death (and under these facts, prior to his marriage to plaintiff) he had only the beneficial interest in the trust corpus or principal, the legal interest then being in his mother as trustee. What he acquired at the time of his grandfather's death was a limited right to the income earned on the trust corpus or principal which became absolute at age 21.
Contrary to the assumption of our dissenting brother, we do not conclude that an interest which is merely beneficially owned or an interest which one may have in property but which is not subject to present enjoyment is not subject to valuation in considering the allocation of assets for purposes of equitable distribution. The resolution of valuation in such cases will invariably involve the remoteness of the interest, as the Rinehart, Hix and Loeb cases, which he cites, point out. We are here concerned with when an interest in certain property was legally and beneficially acquired.
Again, in Pellegrino v. Pellegrino, 134 N.J. Super. 512 (App. Div. 1975); Blitt v. Blitt, 139 N.J. Super. 213 (Ch. Div. 1976), and White v. White, 136 N.J. Super. 552 (App. Div. 1975), the question presented involved contributions or *200 the absence thereof to a pension plan and not the ultimate benefits which would be acquired on retirement. Callahan v. Callahan, 142 N.J. Super. 325 (Ch. Div. 1976), involved the present value of unexercised options to purchase stock which had a present value and which were acquired by the husband. It did not, however, involve the shares that might be acquired in the future by the exercise of the options. Finally, both Di Tolvo v. Di Tolvo, 131 N.J. Super. 72 (App. Div. 1974), and Hughes v. Hughes, 132 N.J. Super. 559 (Ch. Div. 1975), involved causes of action (personal injury and worker's compensation) which had been acquired by the husbands there involved by virtue of tortious injury to each. What remained in each case was the valuation of each claim not its existence. In short, in each of these cases cited there was a present fixed property right (in contributions, stock options and tort claims) legally and beneficially owned by the party in question which required no further legal act for their existence qua property right.
To the contrary, the interest of defendant here in the principal or corpus of the trust established by his grandfather, prior to his attaining the age of 25, while described as a present and fixed interest for purposes of ascertaining its nature in the law of property, i.e., contingent or vested, nevertheless required attainment of the age of 25 to be legally and beneficially acquired.
SEIDMAN, J.A.D. (dissenting).
This appeal is from an order supplementing a judgment of divorce. The issue involved appears to be one of first impression not only in this State but also in other jurisdictions whose matrimonial statutes provide for the distribution of marital property in the event of a divorce. It is the eligibility for equitable distribution of the corpus of a testamentary trust of which defendant husband was the beneficiary, where the trust was created prior to the marriage and terminated during the marriage but before the filing of the divorce complaint. The trial judge held that it was eligible for distribution and *201 included the corpus, or balance thereof, among the assets available for that purpose.
My colleagues agree with the result reached and have accordingly voted to affirm the judgment under review. I come to an opposite conclusion for reasons which follow and am therefore constrained to dissent.
The underlying facts are fully set forth in the majority opinion and require no repetition.
The thrust of defendant's argument is that since the "beneficial interest in the trust herein was clearly property with value in which the beneficiary-future husband `acquired an interest' prior to marriage," the corpus, though received by him after the marriage, was not eligible for distribution. He reasons in reverse that if he had been married at the inception of the trust and divorced thereafter but prior to the age of 25, his trust interest would have been distributable as an interest acquired during the marriage. The conclusion reached is that in this case "the husband's expectancy  the absolute right to the trust property at age twenty-five  accrued prior to the marriage and was clearly more certain than a mere chose in action requiring litigation and adjudication or settlement."
Plaintiff, on the other hand, argues that defendant could not have exercised control over or gained access to the corpus prior to age 25, and that the nature of his interest in the trust was not such that he could be considered to have "acquired" ownership of it for the purpose of equitable distribution. This view is the one that the trial judge seems to have adopted.
Based upon their concept of the statute in question, my colleagues conclude that defendant's "share in the corpus" of his grandfather's estate was not "legally and beneficially acquired" until he attained the age of 25, at which time the marriage still subsisted. My position is that defendant acquired the property prior to the marriage within the meaning of N.J.S.A. 2A:34-23, hence, it was not subject to distribution as an incident to the divorce proceedings. The gulf which *202 separates us is the interpretation to be given to that clause of N.J.S.A. 2A:34-23, particularly the emphasized portion, which, in pertinent part, empowers the court in all actions for divorce "to effectuate an equitable distribution of the property, both real and personal, which was legally and beneficially acquired by them or either of them during the marriage." (emphasis supplied)
The dearth of helpful precedents elsewhere is no doubt largely attributable to wide variations in statutory provisions in the divorce laws of the several states, ranging from no distribution at all of marital property, as in New York, to the distribution of all property, whether acquired before or after the marriage, as in Kansas. At these extremes it is evident that the problem confronting us here would not arise. Nor would it arise in those states having community property systems, for there property owned by each spouse before marriage remains separate, and while that acquired during the marriage becomes community property, constitutional and statutory provisions exclude any gift, inheritance, devise or bequest received by one spouse alone during the marriage. de Funiak, Principles of Community Property, § 69 at 171-174; Baxter, Marital Property, § 11:1 at 173. The Uniform Marriage and Divorce Act, thus far adopted in whole or in part by only a bare handful of states, provides for the division, in "just proportions" based upon enumerated factors, of marital property, which is defined as property acquired by either spouse subsequent to the marriage, but excluding, among other things, property acquired by gift, bequest, devise or descent. 9 Uniform Laws Annotated (Matrimonial, Family and Health Laws), 490 (1973).[1]
*203 As indicated, our statute limits the distribution of property in divorce actions to that which was acquired by either or both spouses during the marriage. It is unique, however, in its use of the words "legally and beneficially" in relation to the property so acquired. Those words do not appear, so far as I have been able to ascertain, in any other statutory provision for the distribution of marital property in divorce proceedings.
There is no legislative history to aid us in construing our statute. The Divorce Law Study Commission, in its Final Report to the Governor and the Legislature, dated May 11, 1970, left for future study by "a fully funded, fully authorized entity" a number of problems, among which was the question of the "fair allocation of property upon termination of a marriage by divorce." Report, at 13-14. The bill to revise the divorce laws, as originally introduced, did not include any provision respecting marital property. The only reference to the matter occurred during the public hearing on the bill before the Assembly Judiciary Committee, when the New Jersey Commissioner on the Uniform Laws recommended that the uniform statute on divorce be adopted. The inclusion of a provision for the equitable distribution of marital property seems to have come about as the result of a Senate amendment, without further explanation. See Painter v. Painter, 65 N.J. 196, 207, 217 (1974). See also Comment, "Painter v. Painter: Equitable Distribution of Marital Assets Upon Divorce," 48 Temple L.Q. 397 (1975).
Underlying the statutory scheme, however, is the recognition that each spouse contributes something "to the establishment of the marital estate even though one or the other may actually acquire the particular property," and therefore, in the event of divorce, "each spouse should receive his or her fair share of what has been accumulated during the marriage." Chalmers v. Chalmers, 65 N.J. 186, 194 (1974). *204 But property owned by either spouse at the time of the marriage, as well as subsequent increments in value (unless contributed to by the other spouse or for which the husband and wife are jointly responsible), will not qualify as an asset eligible for distribution, nor will the "income or other usufruct derived from such property," or any asset "for which the original property may be exchanged or into which it, or the proceeds of its sale, may be traceable." Painter v. Painter, supra 65 N.J. at 214 (1974).
It is readily evident that the key words to be considered are "property," "acquired" and "legally and beneficially," as they are used in the context of the statute.
As for "property," Painter, without further defining the word, held the legislative intent to be that all property, regardless of its source, in which a spouse acquired an interest during the marriage, should be eligible for distribution in the event of a divorce. 65 N.J. at 217. A definition of "property" is found in N.J.S.A. 1:1-2, which states that the enumerated words and phrases thereunder, when used in any statute, "[u]nless it be otherwise expressly provided or there is something in the subject or context repugnant to such construction * * * shall have the meaning herein given to them":
Personal property. "Personal property" includes goods and chatels, rights and credits, moneys and effects, evidences of debt, choses in action and all written instruments by which any right to, interest in, or lien or encumbrance upon, property or any debt or financial obligation is created, acknowledged, evidenced, transferred, discharged or defeated, in whole or in part, and everything except real property as herein defined which may be the subject of ownership.

* * * * * * * *
Real estate; real property. The words "real estate" and "real property," include lands, tenements and hereditaments and all rights thereto and interests therein.
We find nothing in the language of N.J.S.A. 2A:34-23 that is inimical to these all-embracing definitions of property, real and personal. Painter is clearly in accord.
*205 The word "acquired" was considered in Painter, though in a particular setting. There the issue was whether the legislative intent was to limit marital property eligible for equitable distribution to that which was "attained by the individual by his own efforts," as the statute had been construed by the trial judge, thus excluding gifts and inheritances. The Supreme Court held that the Legislature used the word in a more comprehensive sense to include not only property title to which was the direct or indirect result of an expenditure of effort on the part of a spouse, but also assets title to which was received by gift or inheritance, or in any other way. 65 N.J. at 215. The court said, further:
Had the former, more restrictive meaning been intended, we believe that some confining language would have been employed to manifest this purpose. It is certainly a commonplace to say that property has been acquired by gift or that an asset has been acquired by inheritance. In fact the thought is probably most often expressed in this fashion. We think the word should be given this more inclusive meaning in the statute, absent any indication to the contrary. [at 215]
Thus far, it seems evident from Painter that "property" and "acquired" are to be construed expansively. While the words "legally and beneficially," as used in the statute, have not yet been defined in any reported case, no rational ground has been demonstrated for treating them restrictively. My colleagues extract from a standard dictionary a definition of "legal" as "conforming to or permitted by law," and, of "beneficial," as "receiving or entitling one to have or receive in one's own right and for one's own benefit an advantage, use or benefit * * *." It is hazardous to define words in a statute by selective recourse to a dictionary. No doubt the above is one meaning of "legal," but the sense there is in contradistinction to "unlawful" or "illicit," concepts which have nothing to do with the subject-matter of the statute. The definition of "beneficial" is, however, closer to the mark.
The point is that the words "legally and beneficially" are used in tandem with the words "property acquired." There *206 is a long-standing maxim of statutory construction that the meaning of words may be indicated and controlled by those with which they are associated. Germann v. Matriss, 55 N.J. 193, 220 (1970); Boileau v. De Cecco, 125 N.J. Super. 263, 267 (App. Div. 1973), aff'd 65 N.J. 234 (1974). Furthermore, referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent. State v. Wean, 86 N.J. Super. 283, 288 (App. Div. 1965); State v. Congdon, 76 N.J. Super. 493, 502 (App. Div. 1962); 2A Sutherland, Statutory Construction (4 ed. 1973), § 47.33 at 159. Clearly, then, the words "legally and beneficially" must relate to, and thus be construed in the context of, property and its acquisition. We know from Painter that all property in which a spouse acquired an interest during the marriage should be eligible for equitable distribution. The converse must follow logically, namely, that any property in which a spouse acquired an interest prior to the marriage is not eligible for equitable distribution.
I agree with my colleagues that "legally and beneficially" cannot be treated as surplusage. But this adds no support to their interpretation of the words as meaning that "the spouse acquires the property within the intention of N.J.S.A. 2A:34-23 when he or she acquires a title which carries with it the effective power to control or use or enjoy." The statute refers neither to title nor to effective control, nor does it require that the property be reducible to immediate possession. It deals with property acquired by a spouse, and property, by definition, includes all interests therein without distinction, and regardless of their characterization either as legal or beneficial. Why property must have the further attribute of "effective power to control" or be reducible to immediate possession in order to qualify for distribution in matrimonial cases is not explained.
It is well to heed the dictum in Stern v. Stern, 66 N.J. 340, 348 (1975), which cautioned us to be wary of the term "vested interest," in the context of equitable distribution *207 of property under the divorce statute, as a relic of feudal days which, though playing an important part in the development of the law of future interests, was not relevant to the question of equitable distribution. True, Stern left for another day the "important and possibly difficult" question as to what future interests may qualify as property within the meaning of the divorce statute (an issue not involved here), but it emphasized that the statute made no reference to the vesting of an interest in property (nor, indeed, to title to property), but merely required that property, to be available for equitable distribution, had to be acquired during the marriage.
I find no suggestion in Stern that a fixed, present interest in property, such as the one under review, should not be eligible for equitable distribution simply because the owner may not have had the power of "effective control" over it or cannot immediately reduce it to possession. Nor do I discern in the court's intimation that not all "future interests may qualify as `property'" within the intendment of the statute, any recognition by the court that not all "property" is eligible for equitable distribution. Rather, I sense in the foregoing no more than a postponement for later consideration of the issue of whether certain "future interests" may not be property at all, insofar as the divorce statute is concerned. Beyond this, there is nothing in Stern which even remotely supports the majority's concept that the language therein "suggests to us that what property was eligible depended purely on whether it qualified as such within the phrase `legally and beneficially acquired.'"
That which I perceive to be the intendment of the dictum in Stern is illustrated by several cases in other jurisdictions.
In Marriage of Rinehart, 552 P.2d 1346 (Or. App. Ct. 1976), the husband contended, among other things, that in making provision for the division of property in the divorce decree, the court erred in assigning a value to his one-half interest in his mother's home, which was subject *208 to her life estate. He argued that as his mother was still alive and he could not therefore presently enjoy the home it was of little or no value. The court disagreed, holding that the remainder interest was a valuable asset, despite the fact that the placing of an exact value on it might be difficult. A comparable result was reached in Marriage of Hix, 27 Or. App. 197, 555 P.2d 811 (Ore. App. Ct. 1976), where the asset involved was a one-sixth interest in a ranch which the husband had inherited during the marriage, subject to his father's life estate, and from which the husband would receive no income during his father's lifetime.
On the other side of the coin is Loeb v. Loeb, 261 Ind. 193, 301 N.E.2d 349 (Ind. Sup. Ct. 1973), which involved an inter vivos trust established for the benefit of the grantor's three children, one of whom was defendant husband. The trust instrument provided for the payment of the income to the grantor for life, and upon her death the principal and accumulated income would be divided equally among the children; provided, however, that if any child predeceased the grantor, that child's share could be distributed to the survivors. The mother was still alive at the time of the divorce proceedings. On these facts, the court held that the husband's interest was not includible in the property settlement award because he had no present interest of any value, his future interest being contingent upon his surviving his mother. See also, Storm v. Storm, 470 P.2d 367 (Wyo. Sup. Ct. 1970); DeRevere v. DeRevere, 5 Wash. App. 446, 488 P.2d 763 (App. Ct. 1971).
I advert to my recurring theme that as long as the claimed asset is property as defined in N.J.S.A. 1:1-2, it matters not whether the interest was acquired "legally" or "beneficially." I do not read those words in the conjunctive, nor is there any compelling reason to do so. The decisive factor is whether the interest was a fixed, present one acquired during the marriage.
*209 The majority expresses the further view that cases following Painter were concerned with the meaning of "legally and beneficially" and "generally their interpretations accord with one view of the meaning and intent of that phrase." I have reviewed carefully the cases cited and, with one exception, find them completely devoid of any consideration or discussion of that phrase. I do not extrapolate anything from them inconsistent with my concept thereof.
In Pellegrino v. Pellegrino, 134 N.J. Super. 512, 515 (App. Div. 1975), defendant husband, a municipal fireman, had the absolute right to the repayment of his contributions into a pension fund in the event of resignation, dismissal or death prior to retirement. This court held that since he had "a present fixed right to the future enjoyment of the contributions paid by him, even though the date of that enjoyment be uncertain," the amount contributed by him from his earnings during the marriage (up until the date of filing the divorce complaint) was property acquired during the marriage and subject to equitable distribution. A like result was reached in Blitt v. Blitt, 139 N.J. Super. 213 (Ch. Div. 1976), where defendant husband had an absolute right to 50% of his employer's contributions to a pension plan on his behalf (defendant making no contributions of his own), the money being returnable to the member upon his resignation or dismissal prior to qualifying for a benefit. As in Pellegrino, it was held that the portion of the pension plan acquired during marriage should be subject to equitable distribution and additionally, that the postponement of enjoyment was to be considered in determining the manner in, and the time at which, that portion of the plan would be divided. Cf. Kruger v. Kruger, 139 N.J. Super. 413 (App. Div. 1976).
Neither Pellegrino nor Blitt turned on any definition of property "legally and beneficially" acquired. Each recognized the existence of a present fixed right to the pension fund, with only its enjoyment postponed. In Pellegrino *210 particularly, emphasis was placed on the construction of the word "acquired" in a "comprehensive sense." The fact that the fireman in that case had an absolute right to the repayment of his contributions in the event of the termination of employment by resignation or discharge prior to retirement, was significant on the issue of equitable distribution, not from the standpoint of control or right to immediate possession of the funds, but to distinguish that type of pension plan from the one involved in Tucker v. Tucker, 121 N.J. Super. 539 (Ch. Div. 1972), where the employee made no contributions to the plan and had no right of withdrawal before retirement. See also, White v. White, 136 N.J. Super. 552 (App. Div. 1975), where this court stressed that whatever right plaintiff might have to future retirement benefits, where there was no right to prior withdrawal of funds, it did not constitute property acquired during the marriage and was not subject to equitable distribution. It is noteworthy in Blitt that, although the method of repayment, whether in a lump sum or over a period of years, was within the sole discretion of the company's pension committee, such control, the court said, "does not lead to the conclusion that property has not been `acquired' within the meaning of the statute." 139 N.J. Super. at 217.
In Callahan v. Callahan, 142 N.J. Super. 325 (Ch. Div. 1976), involving stock options, defendant husband contended that a stock option did not constitute property subject to equitable distribution since, he argued, it was not an asset but merely a right to acquire an asset in the future, and, moreover, was not transferable otherwise than by will or pursuant to the laws of descent and distribution. Furthermore, the options would terminate if the employee left the company without its consent within three years from the date on which the option was granted. Despite these restrictions, which bore significantly on the employee's "effective power to control," the court held (at 328) that the asset represented property which, "although not cash in *211 hand, is not subject to a contingency, has a reasonably discernible value and awaits but the owner to take actual possession." Nothing was said therein respecting acquisition of the property "legally and beneficially."
A chose in action was the disputed item in Di Tolvo v. Di Tolvo, 131 N.J. Super. 72 (App. Div. 1974). The husband had sustained injuries in an automobile accident while the parties were married. Prior to the filing of the divorce complaint both spouses instituted a negligence action against the claimed tortfeasors. Included were not only the husband's claims but also those of the wife for loss of her husband's services and consortium. The suit was settled after the entry of the judgment of divorce for $7500, of which an amount which came to 6 1/2% thereof was allocated for the per quod claim. The divorce judgment had, among other things, awarded the wife 20% of the prospective recovery in the negligence action. This court held in substance that, taking the "expansive view" in Painter of property acquired during the marriage, together with the general statutory definition of "personal property" in N.J.S.A. 1:1-2 which included choses in action, the cause of action for personal injuries and consequential damages by reason of an accident occurring during the marriage was personal property acquired and owned by the injured person, and also by the spouse to the extent of the latter's interest. We said, further (at 78-80), in these circumstances the judge granting the divorce may make an equitable allocation of any future recovery on the entire chose in action, the manner of distribution being left to his discretion. It did not matter that a recovery might not come to fruition.
See Hughes v. Hughes, 132 N.J. Super. 559 (Ch. Div. 1975), for a comparable treatment of a spouse's unliquidated claim for worker's compensation benefits as a chose in action.
Few things are more uncertain than the outcome of a lawsuit, especially in the tort field. Unless and until a court or jury determines the issue of liability favorably to the claimant and fixes the amount of the damages, the chose in *212 action is just that and no more. To say that the litigant in such case has "control" of the corpus of the claim is realistically unsound. It is deserving of emphasis to note again that in none of the cited cases did the court speak of or even inferentially consider whether the asset had been acquired "legally and beneficially."
Mention should be made of Gauger v. Gauger, 132 N.J. Super. 89 (Ch. Div. 1975), aff'd 138 N.J. Super. 366 (1976), certif. granted 70 N.J. 524 (1976), in which one finds for the first time specific reference to the phrase "legal and beneficial acquisition." The issue was the availability for equitable distribution of a parcel of real property acquired in 1941 by defendant husband and his mother as joint tenants with the right of survivorship. Plaintiff and defendant were married in 1946, the mother died in 1972, and the divorce complaint was filed in 1973. The trial judge held that defendant acquired ownership of the realty upon the original grant and not upon the death of his mother, and thus the subject realty, not having been acquired during coverture, was not subject to possible equitable distribution. This court affirmed o.b., rejecting the contention on appeal that the death of the mother resulted in the "legal and beneficial acquisition" of property by defendant during the marriage.
I turn now to an examination of the nature of the estate or interest created by a testamentary trust such as the one here involved, in order to determine the property rights derived therefrom. The creation of a trust is, of course, a method of disposing of property. Scott, Trusts (3 ed. 1967), § 74 at 676. It is elementary, moreover, that an express trust is a fiduciary relation in which the trustee holds property interests for the benefit of another, and every property interest susceptible of ownership may be the subject-matter of a trust. Bogert, Trusts and Trustees (2 ed. 1965), §§ 111 and 112. The trust estate is commonly called the corpus or principal, as distinguished from the income thereof. The trustee is the legal owner of the property held *213 by him. Moran v. Joyce, 125 N.J.L. 558, 562 (Sup. Ct. 1941). The beneficiary, or cestui que trust, has an equitable estate in the corpus, where the income is directed to be paid to the beneficiary until the payment of the principal at a future date. Strawbridge v. Strawbridge, 35 N.J. Super. 125, 130 (Ch. Div. 1955). In such case the gift will be deemed vested immediately on the death of the testator, in the sense that the interest of the beneficiary is a present one, as distinguished from a future interest. Gifford, adm'r. v. Thorn, 9 N.J. Eq. 702, 708 (E. & A., 1855); Forbringer v. Romano, 10 N.J. Super. 175, 182 (App. Div. 1950); Bardfeld v. Bardfeld, 23 N.J. Super. 248, 252-253 (Ch. Div. 1952); Potter v. Watkins, 99 N.J. Eq. 538, 541-542 (Ch. 1926); Fidelity Union Trust Co. v. Rowland, 99 N.J. Eq. 72, 74 (Ch. 1926); Dusenberry v. Johnson, 59 N.J. Eq. 336, 338 (Ch. 1900). See 6 N.J. Practice (Clapp, Wills and Administration), § 579 at 103 (1962).
It has long been the law of this State that a gift to a trustee is regarded in equity as a gift to the cestui que trust, as if it had been made directly. Forbringer v. Romano, supra, 10 N.J. Super. at 183; Wendell v. Hazel Wood Cemetery, 7 N.J. Super. 117, 123 (App. Div. 1950); Skovborg v. Smith, 8 N.J. Super. 424, 426 (Ch. Div. 1950); Byrne v. Byrne, 123 N.J. Eq. 6, 17 (Ch. 1938); Traverso v. Traverso, 99 N.J. Eq. 514, 519 (Ch. 1926); Neilson v. Bishop, 45 N.J. Eq. 473, 476 (Ch. 1889). Cf. Lippincott v. Pancoast, 47 N.J. Eq. 21, 26 (Ch. 1890). The present interest of a cestui is nonetheless fixed, even where, as here, there is a gift over if the beneficiary does not attain the stipulated age for the payment of the corpus. In such case, where it clearly appears that the intention of the testator was to make a gift with the time of payment postponed until the attainment of the designated age, the gift is subject only to divestment in the event of failure to reach such age. Fidelity Union Trust Co. v. Potter, 8 N.J. Super. 533, 537 (Ch. Div. 1950); Neilson v. Bishop, supra 45 N.J. Eq. at 476. The uncertain *214 event is said to mark the time of payment, not the time of taking title. 6 N.J. Practice (Clapp, Wills and Administration), § 579 at 103-104 (1962). While the interest may cease entirely upon the happening of a condition subsequent, it is still a present and fixed interest.
It should be emphasized at this point that whatever may have been the nature of defendant's interest in the trust established for his benefit, prior to his attaining the age of 21 years, i.e., whether it was a future or present one, there is no doubt that upon his reaching that age his interest was a present one, since he was then, if not earlier, entitled to the immediate beneficial enjoyment of the proceeds of the trust, namely, the income thereof. See Fidelity Union Trust Co. v. Egenolf Day Nursery Ass'n., 64 N.J. Super. 445, 453 (Ch. Div. 1960).
The nature of the beneficiary's interest is aptly and concisely stated in Restatement, Trusts 2d, § 130 at 282:
Except as stated in § 131 [not pertinent here],
(a) if the trust property is personal property, the interest of the beneficiary is personal property;
(b) if the trust property is real property, the interest of the beneficiary is real property * * * *.
The trial judge's concept, shared by the majority, was that the "control date" for determining eligibility for equitable distribution in a situation such as this was "the date that the person is entitled to receive whatever is left to him." In light of the foregoing, I can perceive of no sound reason why this should be so. As I have explained at considerable length, defendant's beneficial interest in the corpus of the trust was property, not diminished in any way by his inability to reduce the corpus to immediate possession. That property was acquired before the marriage. Only the enjoyment of the corpus came to fruition during the marriage. I therefore hold that the trust corpus here was not eligible for equitable distribution except to the extent that it may have increased in value during the marriage by reason *215 of the efforts of the other spouse or those for which both were jointly responsible. Painter v. Painter, supra, 65 N.J. at 214; cf. Scherzer v. Scherzer, 136 N.J. Super. 397, 401 (App. Div. 1975), certif. den. 69 N.J. 391 (1976).
I would reverse and remand for further proceedings consistent with the foregoing.
NOTES
[1] We agree that the testamentary gift was vested and in equity would be considered as a direct bequest to him as a cestui que trust. Wendell v. Hazel Wood Cemetery, 7 N.J. Super. 117 (App. Div. 1950).
[1] do not intend to imply that the words must always be so read and thereby by invocation of artificial property rules, frustrate the purposes of N.J.S.A. 2A:34-23. Cf. Stern v. Stern, 66 N.J. 340, 348 (1975) (rejecting the concept of "vesting.")
[1] It is noteworthy that the Uniform Act has now been revised so as to provide, as an Alternative A (Alternative B relating only to community property, for use in states having that system), for the equitable apportionment of all property and assets belonging to either spouse however and whenever acquired, in accordance with the factors set forth therein. See Uniform Laws Annotated (Supplementary Pamphlet, 1974 to 1976), § 307 at 289.