160 N.J. Super. 400 (1978)
390 A.2d 141
JOSEPH N. CORRIGAN, JR., PLAINTIFF,
v.
BARBARA I. CORRIGAN, DEFENDANT.
Superior Court of New Jersey, Chancery Division (Matrimonial).
Decided June 22, 1978.
*401 Mr. Martin S. Goldin for plaintiff (James F. Clarkin, III on the brief; Messrs. Borrus, Goldin and Foley, attorneys).
Ms. Ann Mufson for defendant (Mr. Arthur H. Miller, a professional corporation).
DEEGAN, J.S.C.
The issue in this case is the eligibility for equitable distribution of an alternate death benefit payable, should an employee die before he retires, from the employee's pension reserve. On motion for summary judgment, plaintiff seeks a ruling that the benefit payable from his pension reserve in the event of his death is not an asset subject to equitable distribution. This question has not been decided previously in this jurisdiction.
The facts are not in dispute. Joseph and Barbara Corrigan were married in November 1950 and separated in December 1975. Complaint for divorce was filed on or about June 22, 1977. Subsequent to the marriage Joseph commenced employment with the Port Authority of New York and New Jersey, and continues working there to this date. Having been employed for more than 20 years by the Port Authority, he is fully eligible to collect benefits under his pension plan should he retire. An additional feature of Joseph's plan is that an alternate death benefit is provided for in an amount equal to the pension reserve which would have been established had Joseph retired on the date of death. Here the amount of the reserve fund which would act as a death benefit should Joseph die before retirement approximates $157,000. Of this fund the greatest part of it, *402 some $151,000, was contributed by his employer. Joseph has the power to nominate the beneficiary, and did appoint his two adult sons as beneficiaries after his separation from Barbara.
Both parties agree that under governing case law Joseph's interest in the retirement provisions of the pension plan is subject to equitable distribution. Kruger v. Kruger, 73 N.J. 464 (1977); McGrew v. McGrew, 151 N.J. Super. 515 (App. Div. 1977). They disagree sharply, however, on whether the alternate death benefit provision of the same plan is also subject to equitable distribution.
Joseph essentially argues that since the alternate death benefit can never be "acquired" within the meaning of the equitable distribution statute, N.J.S.A. 2A:34-23, it is not subject to division. Defendant Barbara, on the other hand, contends that Joseph's rights under the retirement program should be viewed as a bundle of property rights acquired during the marriage, and that there is no equitable basis for limiting Barbara to a portion of a retirement allowance. Further, both parties claim that several California cases dealing with this subject support their respective viewpoints.
In California death benefits connected to pension plans apparently are excluded from consideration as community property. In re Bruegl, 47 Cal. App.3d 201, 120 Cal. Rptr. 597, 600 (D. Ct. App. 1975); In re Peterson, 41 Cal. App.3d 642, 115 Cal. Rptr. 184, 191-94 (D. Ct. App. 1974); see Benson v. Los Angeles, 60 Cal.2d 355, 33 Cal. Rptr. 257, 384 P.2d 649 (Sup. Ct. 1963); see also, Waite v. Waite, 6 Cal.3d 461, 99 Cal. Rptr. 325, 331, 332 n. 6, 492 P.2d 13, 19, 20 n. 6 (Sup. Ct. 1972); Phillipson v. Board of Administration, 3 Cal.3d 32, 89 Cal. Rptr. 61, 67-68, 473 P.2d 765, 771-772 (Sup. Ct. 1970). The rule, however, has been criticized strongly, In re Peterson, supra, 115 Cal. Rptr. at 194, and it is open to debate whether the decision in In re Brown, 15 Cal.3d 838, 126 Cal. Rptr. 633, 544 P.2d 561 (Sup. Ct. 1976), overruled sub silentio the exclusion of pension death benefits from community property. See 126 *403 Cal. Rptr. at 641 and n. 14, 544 P.2d at 569 and n. 14. After examination of the cases, one can only conclude that California's position on this precise issue is presently murky.
It is far more expeditious for the court to concentrate on New Jersey's law to arrive at a decision. In connection with this, Barbara argues that McGrew v. McGrew, 151 N.J. Super. 515 (App. Div. 1977), controls the matter before the court. In McGrew the employee, although still working, was capable of retiring and receiving pension benefits at any time. At issue was whether, due to continued employment, the uncertainty of "when or whether the retirement benefits will be enjoyed" should defeat equitable distribution. The court found the retirement benefits includable, stating that "the consideration critical to the issue of distribution is the extent to which the anticipated benefits will have been generated by the mutual effort of the parties," rather than the likelihood of the enjoyment of those benefits. At 518. Barbara contends that this rationale compels distribution of Joseph's death benefit since that also exists through the joint efforts of husband and wife. However, equally "critical" to the issue of distribution, as the McGrew court recognized, is "the nature of the interest and defendant's control over it." McGrew, supra at 518, quoting from Blitt v. Blitt, 139 N.J. Super. 213, 218 (Ch. Div. 1976). What, then, constitutes control under N.J.S.A. 2A:34-23, the equitable distribution statute, and what interests qualify for distribution?[1]
*404 The relevant part of N.J.S.A. 2A:34-23 permits a trial court "to effectuate an equitable distribution of property, both real and personal, which was legally and beneficially acquired * * * during the marriage." As put by Judge Seidman, "[i]t is readily evident that the key words to be considered are `property,' `acquired,' and `legally and beneficially,' as they are used in the context of the statute." Mey v. Mey, 149 N.J. Super. 188, 204 (App. Div. 1977) (Seidman, J., dissenting).[2]
In Mey the Appellate Division gave extensive consideration to the meaning of the statute. There the defendant, a beneficiary of a trust, obtained at age 21 the accumulated income, or a vested interest, in the trust. At that time he was unmarried. Later, when at age 25 and married, he obtained his share of the corpus. Upon divorce defendant objected to the distribution of the corpus on the basis that, since he received a vested interest while unmarried, the property was "acquired" before the marriage. Writing for the majority Judge Horn held that the corpus "was not legally and beneficially acquired" until after the marriage. At 197.
In the majority's discussion of N.J.S.A. 2A:34-23 it noted that "[w]e cannot treat `legally and beneficially' as surplusage." At 193. That phrase was then defined to mean that "the spouse acquires the property within the intention of N.J.S.A. 2A:34-23 when he or she acquires a title which carries with it the effective power to control or use or enjoy." At 193-94. Under this interpretation of the *405 statute the majority reasoned that defendant Mey had no "control" over the corpus until age 25, at which time it could have been applied to his benefit.
Judge Matthews, in a concurring opinion, called for a "conjunctive" reading of "legally and beneficially." At 198-99. Commenting on the equitable distribution statute, and the property interests subject thereto, he stated that
In my view, N.J.S.A. 2A:34-23 cannot be read to require that every interest in property acquired during a marriage by a party thereto is subject to equitable distribution. To so read the statute would be to ignore the words "legally and beneficially" used therein. For example, if a spouse should qualify as a trustee of a trust during his or her marriage, the legal interest held by the spouse in the corpus would not be subject to equitable distribution in the event of divorce; yet the spouse does have an "interest" in the property constituting the corpus. Again, assume that a spouse is named beneficiary of a trust to receive the income in such amounts as the trustee shall in his sole discretion deem necessary for the beneficiary's support; the availability of that beneficial interest for equitable distribution would be at best, highly doubtful. [at 198]
In dissent, Judge Seidman viewed the acquisition as taking place prior to the marriage. He argued that the terms "legally and beneficially" should have been treated as expansively as the words "property and acquired" had been in previous cases. See Painter v. Painter, 65 N.J. 196, 217 (1974). He criticized the majority for reading into the statute the requirement that property is acquired only when "the effective power to control or use or enjoy" is present stating that:
The statute refers neither to title nor to effective control, nor does it require that the property be reducible to immediate possession. It deals with property acquired by a spouse, and property, by definition, includes all interests therein without distinction, and regardless of their characterization either as legal or beneficial. Why property must have the further attribute of "effective power to control" or be reducible to immediate possession in order to qualify for distribution in matrimonial cases is not explained.

[at 206]
*406 Under Judge Seidman's view, reliance on "legally and beneficially," should be abandoned, making the "decisive factor * * * whether the interest was a fixed, present one acquired during the marriage." At 208. This court finds Judge Seidman's cogent dissent persuasive, but realizes that it must apply the majority ruling to this case.
Reading Mey, it is interesting to note that that court considered the acquisition of the vested interest and the corpus separately, and not as a "bundle" acquired at one time or another. Here the court must also regard the pension fund and the alternate death benefit as separate interests, even though each derives from the same reserve fund. The court cannot close its eyes to the fact that Joseph's rights in regard to the alternate death benefit differ significantly from his rights in the pension. Clearly, in relation to the pension, he has the right to control it for use to his benefit. But with regard to the alternate death provision, he possesses at best a mere power to designate a beneficiary. See generally, In re Roger's Will, 250 App. Div. 26, 293 N.Y.S. 626, 632 (App. Div. 1937). His interest is no more significant than that of the trustee in the example given by Judge Matthews in Mey. Joseph's interest, therefore, does not rise to the status of "property * * * legally and beneficially acquired * * * during the marriage." N.J.S.A. 2A:34-23. The court thus holds that a power to designate a beneficiary of an alternate death benefit, which is payable from an employee's pension reserve, does not constitute property within the meaning of N.J.S.A. 2A:34-23, and that any benefits payable through exercise of such a power are, therefore, not subject to equitable distribution should the employee die before he retires.
Plaintiff's motion for summary judgment is granted.
NOTES
[1] The McGrew court remanded the case to the trial court for distribution "in accordance with equitable principles," noting that it "should take into account, among other things, defendant's options under the retirement plan and the possibility of his death before retirement or before exercising an available option. See generally, In re Marriage of Brown, supra, 126 Cal. Rptr. at 639, 640, 544 P.2d at 567, 568." At 151 N.J. Super. 519. Plaintiff considers that language of McGrew as sufficient authority for including death benefits in the overall scheme for distribution of the pension plan. That portion of McGrew, however, did not empower trial courts to go so far as to, in effect, preserve the wife's interest by recompensating her with a replacement share either of a death benefit, or, for that matter, with a share of an extant life insurance policy. Such would be an overly ambitious reading of McGrew. The sentence of that case in question means only that death, if imminent, is a factor which should bear on the calculation of the pension's present value and the consequent distribution of that value. This view is supported by reading the relevant section of In re Brown cited to by the McGrew Court.
[2] Appeal pending pursuant to R. 2:12-1.