142 N.J. Super. 325 (1976)
361 A.2d 561
MARTHA ANN CALLAHAN, PLAINTIFF,
v.
EDWARD W. CALLAHAN, DEFENDANT.
Superior Court of New Jersey, Chancery Division (Matrimonial).
Decided May 18, 1976.
*326 Mr. Anthony M. Mahoney for plaintiff (Messrs. Bernstein and Mahoney, attorneys).
Mr. Monroe Ackerman for defendant (Messrs. Rudd and Ackerman, attorneys).
GRIFFIN, J.S.C.
On November 13, 1975 a final judgment of divorce was entered in this matter in favor of defendant husband on the ground of cruelty. The judgment additionally set forth the respective custody, support and visitation rights of the parties and provided for the equitable distribution of property in dispute. Thereafter, plaintiff applied to this court and, with consent of defendant, the judgment was amended to provide for a dual judgment of divorce. Plaintiff *327 also petitioned the court to distribute certain property owned by defendant of which the court was unaware when making the original distribution. Due to the unusual nature of the assets involved, and in fairness to the parties, the court will consider this application.
Defendant is an executive with a large international corporation. In this position he participates in the company qualified stock option plan. At the time of the divorce defendant owned the following options, all acquired during the marriage:

 1,500 shares at $23 a share, expired
 February, 1975;
 500 shares at $34 a share, expiring
 May, 1979;
 500 shares at $29 a share, expiring
 February, 1981;
 1,500 shares at $32 a share, expiring
 February, 1981.

Defendant exercised the first of these options on February 21, 1975 just prior to its expiration when the stock price was 33 3/4. The option was exercised in full with a $34,500 loan from the Chase Manhattan Bank.
Defendant contends that the stock options do not constitute "property" which is subject to equitable distribution under the statute, N.J.S.A. 2A:34-23. He argues that an option is not an asset but simply a right to acquire an asset in the future. Additionally, he refers to the restrictions within the company option plan. Options are not transferable otherwise than by will or pursuant to the laws of descent and distribution. During the life of the employee the option may be exercised only by him. Options are terminated if the employee leaves the company without consent of the corporation within three years from the date on which the option was granted. Finally, defendant argues that he is subject to the Securities and Exchange Commission's "insider trading" rules which would require him to forfeit to the corporation any profit resulting from the *328 sale of stock within a specified period from the date of purchase.
Counsel have failed to submit any authority directly on point, nor has research disclosed any. Nevertheless, the nature of property subject to equitable distribution under the statute has been extensively treated in a series of recent cases dealing with pensions. These decisions are collected and discussed in this court's recent opinion, Blitt v. Blitt, 139 N.J. Super. 213 (Ch. Div. 1976). The statutory analysis enunciated there is likewise applicable to the case at bar and need not be repeated. Can the defendant deny that the stock options represent property which, "although not cash in hand, is not subject to a contingency, has a reasonably discernible value and awaits but the owner to take actual possession"? Blitt, supra at 216.
The pensions and profit-sharing plan treated in Blitt and the cases cited therein, and the stock options here considered, represent types of property which are similar in a number of respects. Both constitute a form of compensation earned by the spouse during the marriage. Both are tied to respective plans which place some restriction on the enjoyment of the asset. For example, a pension may be deferred until retirement or termination of employment; the stock options here are withdrawn if the defendant terminates his employment with the corporation. The value of a pension at any particular time is generally calculable from the terms of the plan. Likewise, the option has a reasonably discernible value from the price of the stock.
Defendant would distinguish the stock option from other forms of property subject to equitable distribution because an expenditure on his part is required to exercise the option. Certainly this court does not intimate that the pension cases and stock option are identical. The myriad forms of property ownership in the modern world dictate that virtually no universal principle can be devised to fit every case. The latest decision, Kruger v. Kruger, 139 N.J. Super. 413 (App. Div. 1976), recognized the hybrid nature *329 of property such as a pension when the court held that although the defendant's military retirement pay and disability benefits were subject to equitable distribution, the wife could not bequeath such payments in event she predeceases her former husband. Hence, for the purpose of determining whether these options shall be distributed, the fact that an expenditure is required does not seem a crucial factor to this court since the stock could be pledged against its cost. Therefore, following the reasoning expressed in the pension cases and the factors cited herein, these options are subject to equitable distribution.
The more perplexing problem facing the court is determining the manner of distribution, recognizing the restrictions of the plan and considering defendant's argument that conversion of the options requires an expenditure on his part. A solution to this dilemma is provided by the Supreme Court's suggestion in Painter v. Painter, 65 N.J. 196 (1974):
* * * Where, however, the court is called upon to exercise its powers, either in reviewing a proposed [property] settlement when asked to give its approval, or in effecting the allocation itself, it will not be improper for a judge to give appropriate heed to legitimate tax considerations, nor to view sympathetically a resort to the trust device, with its great flexibility, where the most equitable disposition of property interests can thereby be best attained. [at 212; emphasis supplied.]
Following this hint, a constructive trust impressed on the defendant in favor of plaintiff for a portion of the options owned by him will best effect the distribution of the property between the parties without inflicting undue financial and business liabilities upon the defendant.
In the past, fraud has been thought to be an essential element of a constructive trust. Gordon v. Griffith, 113 N.J. Eq. 554 (Ch. 1933). But a court of equity is not so limited today. "[T]he better view * * * is that a constructive trust will be impressed in any case where to fail to do so will result in an unjust enrichment." D'Ippolito v. Castoro, *330 51 N.J. 584, 588 (1968), citing Clark v. Judge, 84 N.J. Super. 35, 61 (Ch. Div. 1964), aff'd o.b. 44 N.J. 550 (1965). On this issue our Supreme Court wrote in Stretch v. Watson, 5 N.J. 268 (1950):
There may be a constructive trust where the retention of the property or the beneficial interest would constitute an unconscionable advantage by the holder of the legal title, even though its acquisition was not wrongful. Where the property has been acquired in such circumstances that the holder of legal title may not in good conscience retain the beneficial interest, equity holds him accountable as trustee. [at 279]
The same thoughts are expressed by the court in Moses v. Moses, 140 N.J. Eq. 575, 580 (E. & A. 1947). Bogert, Trusts & Trustees, (2d ed. 1960), § 471 quotes the classic statement by Cardozo in Beatty v. Guggenheim Exploration Co., 225 N.Y. 380, 386, 389, 122 N.E. 378, 380, 381 (Ct. App. 1919), concerning the powers of an equity court:
A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee. * * * A court of equity in decreeing a constructive trust is bound by no unyielding formula. The equity of the transaction must shape the measure of relief.
In view of this authority, it is appropriate for this court to utilize the trust device in this case where actual transfer of the options (or exercise and transfer of the stock) may be neither possible, profitable, nor convenient.
Plaintiff is therefore granted a 25% ownership of each remaining option with defendant acting as trustee.[1] He *331 shall exercise her share of the options only at her direction, but plaintiff must supply defendant with the funds necessary to make the purchase. Defendant, however, must pledge the stock at plaintiff's request should she wish to utilize it to finance her purchase. Once exercised, defendant shall hold the stock in trust for plaintiff. Following the exercise of the option, plaintiff may require defendant to transfer the stock held in trust to her or sell it on the market and turn over the proceeds, with two restrictions.
First, plaintiff shall not order a transfer of the stock to her, or a sale of the stock, within six months of its acquisition so as not to violate the Securities and Exchange Commission's "insider trading" rules. Second, without expressing any opinion on the tax consequences, if the transfer of the trust stock to plaintiff or a sale on the market for her benefit results in tax liability to defendant, she shall save him harmless from such liability.
With regard to the option which has already been exercised by defendant, the problem is slightly more complex. He has borrowed $34,500 to exercise the option. The option had not been exercised prior to the filing of the complaint.
Thus, under the terms of this opinion, it would be unfair to deny distribution. Therefore, defendant will hold the same percentage of shares in trust for plaintiff as above. Plaintiff shall pay defendant the cost he incurred in exercising her share of the option plus interest since February 24, 1975 at the same rate as his loan. Plaintiff may direct defendant to pledge her portion of the stock to finance her payment to him. If and when plaintiff desires outright transfer of the trust stock to her or sale on the market, the same two restrictions as outlined above regarding "insider trading" and potential tax liability apply.
NOTES
[1] This percentage is substantially less than the percentage applied to other assets, primarily because of its nature. The unexercised options may be worth nothing. If the stock price increases, this may be due, in some small way, to defendant's efforts. Plaintiff should not share in this. Also, there is no limitation on inheritance imposed, as in Kruger, supra.