494 A.2d 721

**Barbara GREEN**

v.

**Michael I. GREEN.**

**No. 1342, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

July 8, 1985.

124

Joel Marc Abramson and Eliot G. Striar, Columbia (Talkin & Abramson, Columbia, on brief), for appellant.

Ann M. Turnbull, Baltimore (Frank, Bernstein, Conaway & Goldman, Baltimore, on brief), for appellee.

Argued before BISHOP, ADKINS and KARWACKI, JJ.

KARWACKI, Judge.

On July 26, 1984, the Circuit Court for Howard County entered a decree of divorce *a vinculo matrimonii* terminating the 14 year marriage of Barbara Green, the appellant, and Michael Green, the appellee. Custody of the parties' two minor children was awarded to the appellant. The trial court made a determination and valuation of marital property, and then granted the appellant a monetary award of $134,376.95. The court also determined the ownership of certain items of personal property not considered to be marital or family use property. The appellee was ordered to pay to the appellant child support of $400 per week, alimony of $200 per week for a period not to exceed three

years, and a $5,000 contribution to her attorney's fees and litigation costs.

The parties were married on November 28, 1970 in Newton, Massachusetts. Each had recently graduated from Boston University. Shortly thereafter they moved to Columbia, Maryland as Mr. Green had earlier accepted an offer of employment with the federal government at the Department of Defense. Both parties also engaged in graduate studies at Johns Hopkins University. Mrs. Green eventually obtained a Master's Degree in computer science. Mr. Green earned a Master's Degree in mathematics.

Mr. Green initially worked for the Defense Department as a mathematician, and later as a computer systems analyst. Mrs. Green worked for some time as a school teacher before she too became employed at the Department of the Defense. The parties' daughter, Jaime Rebecca, was born in October, 1976. After Jaime's birth the appellant continued to work part-time and, as Jaime grew older, worked full-time for a brief period. A son, Jason, was born in May 1979, and after a six month period at home, the appellant returned to work on a part-time basis at the Defense Department. In January of 1979, the appellee left his government job and began work as a salesman for Network Systems, a computer company specializing in high technology computer products.

Throughout the marriage the parties shared the financial, household and child care responsibilities. Until 1979 their standard of living was modest; Mrs. Green testified that at the time her husband left the Defense Department he was earning $26,000 and her income was approximately $22,000. At Network Systems Mr. Green's income increased dramatically; in 1983 he earned $179,900 through salary and commissions. Both parties testified that they continued to live on their combined salaries, and that they invested the appellee's commissions, which comprised approximately 80% of his annual income.

At about the time Mr. Green made his career change, the family situation became less harmonious. The couple suffered several family crises including the death of the appellee's father and the illness of his mother. Their son, Jason, developed spinal meningitis. The appellee's job required that he travel, and this apparently added to the pressures upon the family. In 1981 the parties sought professional counseling in an effort to resolve their personal and marital problems, but their relationship continued to decline.

In September of 1982, the appellee moved out of the marital home and purchased a condominium in College Park where he took up residence. The testimony of the parties indicates that they hoped at the time that the separation would be temporary. At the time of the separation, the parties informally agreed to maintain their finances and investments at the "status quo." The appellee was to deposit money out of his base salary into a household account and the appellant would pay all the household expenses and bills out of this account. The appellee would retain his commissions to meet his expenses. This amicable trial separation came to an abrupt end, however, when in November the appellee withdrew $20,000 from the parties' joint account and deposited those funds in a newly opened account held in his own name. At that time he also limited his support payments for the appellant and their children to $900 per month.[1] On July 26, 1983 he took possession of a home he purchased in Vienna, Virginia, where he thereafter lived with Ms. Diane Sass and her children.

During their marriage the parties accumulated various assets including stocks, mutual funds, public tax shelters, real estate partnership shares, bank accounts, stock options, real estate, and tangible personal property. Some of these assets are held individually by the parties; others are held jointly.

---

1. In May 1983 pursuant to a *pendente lite* order sought by the appellant, the trial court increased this amount to $1,900 per month in child support and $1,400 per month in alimony.

Upon appeal of the trial court's decision, the appellant raises numerous issues for our consideration. She contends that:

I. The court erred in failing to include various items in its list of marital property;

II. The court erred in failing to value the marital property as of the date of the decree of absolute divorce;

III. The court erred in failing to determine the proper valuation of various items of marital property;

IV. The court erred in making certain deductions from the value of the marital property in deciding on the monetary award;

V. The court erred in failing to make an appropriate monetary award to adjust the equities concerning the marital property between the parties;

VI. The court erred in failing to award the appellant a contribution for funds she expended toward maintaining and repairing the marital home and automobile;

VII. The court abused its discretion by failing to order a partition of the personal property owned by both of the parties;

VIII. Md.Code (1974, 1984 Repl.Vol.), §§ 3-6A-03 and 3-6A-04 of the Courts and Judicial Proceedings Article, which prohibit the court from ordering a partition of property titled in the name of only one party, violate the appellant's right to equal protection of the laws guaranteed by the 14th Amendment;

IX. The court erred in failing to award the appellant a chinese vase as her personal property;

X. The court erred in making an unfair and inequitable award of alimony to the appellant for an arbitrarily fixed limited period rather than for an indefinite period;

XI. The court abused its discretion in failing to provide a fair and equitable award of child support to the appellant; and

XII. The court abused its discretion in granting insufficient attorneys' fees and costs to the appellant.

Preliminarily, the appellee has filed a motion to dismiss this appeal. As grounds for his motion he asserts that: 1) in her brief the appellant's statement of the facts grossly distorts the record, in violation of Md.Rule 1031 c. 4.; and 2) the record extract is arranged incoherently, in contravention of Rule 1028 a. Although we acknowledge some validity to the appellee's complaints, we do not consider the appellant's violations sufficiently grave so as to warrant the sanction of dismissing her appeal, and we will deny his motion.

## I. *The Marital Property*

The appellant argues initially that certain assets should have been declared by the trial court to be marital property, pursuant to Md.Code (1984), § 8–201(e) of the Family Law Article.[2] We will address each of those items specifically.

### A. Stock Options

Under two separate stock option plans offered by his employer, the appellee, during the marriage, acquired the right to purchase 1,000 shares of Network Systems: 500 shares at $25 per share and 500 shares at $15 per share.[3] As the result of two subsequent stock splits, these options were expanded to the right to purchase a total of 20,000

---

**2.** At the time of the issuance of the parties' divorce decree, provisions of the Property Disposition in Annulment and Divorce Law (hereafter the "Marital Property Act" or the "Act"), were contained within § 3–6A–01 through § 3–6A–08 of the Courts and Judicial Proceedings Article. Those provisions have since been recodified as § 8–201 *et seq.* of the Family Law Article, effective October 1, 1984. We shall cite to the Family Law sections to avoid confusion with respect to statutory references. All section citations are to sections of the Family Law Article unless otherwise specified.

**3.** The plans were offered on January 31, 1979 and August 27, 1980.

shares: 10,000 shares at prices ranging from $1.25 to $2.50 per share, and an additional 10,000 shares at prices ranging from $.75 to $1.50.

The options are irrevocable and unassignable. The plans provide that the rights may be exercised over a period of five years in increments of 25% of the total shares on each anniversary date. The plans further provide that the appellee must be an employee of the company at the time he exercises his options. Nevertheless, the options may be exercised by the appellee, even if his employment has been terminated, provided such termination occurs not more than 90 days before the date of exercise. The options may also be exercised by the appellee's estate.

As of the date of the close of evidence in the trial below, Mr. Green had exercised his right to purchase 10,000 shares of stock under the January 31, 1979 plan, and 5,000 shares under the August 27, 1980 plan. These shares were treated by the trial court as marital property and valued at approximately $20 per share. As to the options on the remaining 5,000 shares, 2,500 were exercisable at the time of trial, but had not been exercised, and 2,500 were not exercisable until after trial (August 27, 1984). With respect to these unexercised stock options, the trial court made the following determination:

> The [appellee] has stock options for 5,000 shares of Network Systems stock which cannot be exercised at this time. The [appellant] contends that these options are marital property and have value. The [appellee] contends that the stocks have not been acquired and thus, something not acquired during the marriage cannot be marital property. He further contends that these options carry no value until exercised and can only be exercised while employed by Network. These options are personal to the employee and cannot be assigned or sold. Further, the option to exercise has not yet arrived. Under these circumstances, the [appellant's] expert witness opined that the options had no fair market value. The Court is of the same opinion.

Mrs. Green argues that these options should have been valued and included as marital property. We agree.

We have yet in Maryland to consider whether stock options acquired during a marriage, but unexercised before the termination of the marriage, are marital property subject to equitable adjustment. The Marital Property Act contemplates a three step process in determining a monetary award. As the Court of Appeals stated in *Schweizer v. Schweizer*, 301 Md. 626, 629, 484 A.2d 267 (1984), the process requires that:

(1) [T]he court shall determine which property is marital property....

(2) The court shall determine the value of all marital property.

(3) [Upon compliance with (1) and (2)], the court may grant a monetary award as an adjustment of the equities and rights of the parties concerning marital property, whether or not alimony is awarded. The court shall determine the amount and the method of payment of a monetary award....

It is clear that steps 1 and 2 hinge upon the definition of "marital property." Section 8–201(e) provides:

(e) Marital property.—(1) "Marital property" means the property, however, titled, acquired by 1 or both parties during the marriage.

(2) "Marital property" does not include property:

(i) acquired before the marriage;

(ii) acquired by inheritance or gift from a third party;

(iii) excluded by valid agreement; or

(iv) directly traceable to any of these sources.

Preliminary to our determination of whether these stock options are marital property, we must ascertain whether they are "property" within the meaning of the Act, and, if so, whether they were "acquired" during the marriage. In *Archer v. Archer*, 303 Md. 347, 493 A.2d 1074 (1985), the Court of Appeals was presented with the question of wheth-

er a medical degree and license to practice medicine obtained by a spouse during marriage constitute marital property within the contemplation of the Marital Property Act. While holding that a professional degree or license does not possess any of the basic characteristics of property as contemplated by the Act, the Court of Appeals reiterated its view that "property" is:

a term of wide and comprehensive signification embracing " 'everything which has exchangeable value or goes to make up a man's wealth—every interest or estate which the law regards of sufficient value for judicial recognition.' "

*Deering v. Deering,* 292 Md. 115, 125, 437 A.2d 883 (1981); *Diffendall v. Diffendall,* 239 Md. 32, 36, 209 A.2d 914 (1965). In *Bouse v. Hutzler,* 180 Md. 682, 686, 26 A.2d 767 (1942), we said that the word "property," when used without express or implied qualifications, "may reasonably be construed to involve obligations, rights and other intangibles as well as physical things." "Goodwill," for example, has been characterized as a legally protected valuable property right. *Schill v. Remington Putnam Co.,* 179 Md. 83, 88–89, 17 A.2d 175 (1941). *Id.* at 356, 493 A.2d at 1079. See also Black's Law Dictionary (5th ed. 1979).

The few courts in other jurisdictions that have addressed this question have differed as to whether stock options are "property" subject to equitable allocation. In *Richardson v. Richardson,* 280 Ark. 498, 659 S.W.2d 510 (1983), the Supreme Court of Arkansas found that stock options obtained during the marriage under a restrictive stock option plan have value and are marital property. The Appellate Court of Illinois, in the case of *In re Marriage of Moody,* 119 Ill.App.3d 1043, 75 Ill.Dec. 581, 457 N.E.2d 1023 (1983), held to the contrary that nontransferable options cannot be valued in a situation where "it is possible, if not probable that [the owner] might never be able to exercise the options prior to the expiration dates of the purchase agreements." *Id.* at 1048, 75 Ill.Dec. at 585, 457 N.E.2d at 1027. Under

these circumstances, said the court, the options did not constitute "property." Interestingly, the court on remand was authorized to retain jurisdiction until such time as the options were exercised or expired. If exercised, the court could in its discretion allocate a share of the profit to the nonholder spouse. In *Kruger v. Kruger,* 73 N.J. 464, 375 A.2d 659 (1977) the Supreme Court of New Jersey, in holding that a federal military pension was property legally and beneficially acquired during marriage and subject to equitable distribution upon divorce, stated that:

> The *right* to receive monies in the future is unquestionably such an economic resource. In most situations its present dollar value can be computed.... No one would quarrel with the proposition that the recipient of a life estate created by a testamentary or *inter vivos* trust owned a valuable asset which would be subject to equitable distribution. So, too, if one purchased or acquired an insurance annuity which paid a weekly sum certain to the beneficiary for life, the right to collect those funds would also be considered property subject to distribution. There are many different types of employee benefits, which employees or former employees receive, which everyone would readily admit are assets that have been acquired during employment. Deferred compensation, *stock options,* profit-sharing and pensions are typical examples.

*Id.* at 468–69, 375 A.2d at 662 (emphasis added.) A year earlier, in the case of *Callahan v. Callahan,* 142 N.J.Super. 325, 361 A.2d 561 (1976), the Superior Court of New Jersey held that stock options acquired by the husband under a restricted option plan offered by his employer constituted marital property. In so holding, the court viewed such stock option plans as similar in nature to pensions and profit sharing plans, since they all are "form[s] of compensation earned by the spouse during marriage." *Id.* at 328, 361 A.2d at 562–63.

In *Deering v. Deering,* 292 Md. 115, 437 A.2d 883 (1981), the Court of Appeals held that a spouse's pension rights, to

the extent accumulated during the marriage, constitute "marital property" within the meaning of The Marital Property Act. The Court of Appeals emphasized that its holding applied to all pensions, whether vested or unvested, or whether matured or unmatured. This Court in *Ohm v. Ohm*, 49 Md.App. 392, 431 A.2d 1371 (1981) had earlier reached the same conclusion. The Court of Appeals in *Deering* noted: "It is significant that over the past several years, pension benefits have become an increasingly important part of an employee's compensation package which he or she brings to a marriage unit." 292 Md. at 122, 437 A.2d 883. And in *Ohm*, this Court identified, through citations to numerous cases, those jurisdictions which have held that rights under a private or public pension plan, to the extent such rights were acquired during the marriage, are property subject to division upon dissolution. We noted that these decisions rested upon the rationale "that retirement benefits are a form of deferred compensation or wage substitute and the right to receive such benefits, being contractual in nature, is a chose in action and thus, property." *Ohm*, 49 Md.App. at 397, 431 A.2d 1371.

As with pension plans, restricted stock option plans like those we consider here are a form of employee compensation, providing to the employee the right to accept within a prescribed time period and under certain conditions the corporate employer's irrevocable offer to sell its stock at the price quoted. If the employer attempts to withdraw that offer, the employee has "a chose in action" in contract against the employer. We therefore conclude that stock option plans, like other benefits in an employee's compensation package, constitute "property" as used in the definition of marital property. Furthermore, because the plans in the case *sub judice* granted stock options to the appellee while he was married to the appellant, those options were "acquired" during the marriage. *See Harper v. Harper*, 294 Md. 54, 448 A.2d 916 (1982). The stock options are therefore marital property under the terms of § 8–201(e) and as such are subject to valuation and equitable adjustment in

the form of a monetary award, pursuant to §§ 8–204 and 8–205.

The trial court stated in its memorandum opinion that the stock options were valueless because they had no "fair market value." Although it is true that an unassignable, unsalable option has no fair market value, it is nonetheless an economic resource, comparable to pension benefits, to which a value can be attributed. We will comment briefly upon the method by which the trial court may value and adjust the parties' equities in this form of marital property.

■ The appellate courts of Maryland have recognized the complexity of the task confronting trial courts in properly valuing and allocating certain forms of marital property. *Deering*, 292 Md. at 129, 437 A.2d 883; *Ohm*, 49 Md.App. at 405–06, 431 A.2d 1371. An elastic approach to the problem is required so as to accommodate the circumstances presented by each case. *Nisos v. Nisos*, 60 Md.App. 368, 383, 483 A.2d 97 (1984). As with pensions, the valuation and allocation of stock options necessitates such a flexible approach. In completing steps 2 and 3 of the procedure for allocating this marital property by formulating an equitable monetary award, the court must take into consideration the nature of the appellee's property right in the options. In simple terms, the appellee's property interest can be described as the *right to choose* whether or not to purchase 5,000 shares of Network Systems stock on certain dates at specified prices. Thus the court may not adopt an approach to the equitable adjustment of that property which would operate to compel the appellee to exercise his options, since to do so would in effect deprive him of the essence of his property interest; *i.e.*, the right to make a choice regarding the exercise of the options.

The trial court may in its discretion, however, adopt an "if, as and when" approach to the valuation and equitable allocation of the unexercised options, including the 2,500 matured options as well as the 2,500 unmatured options. This approach has proven to be a workable method for the

allocation of unmatured pensions, *see Deering, supra,* and, we believe, is equally effective in the allocation of stock options. We explain. Under the second of the three step process for the determination of a monetary award in adjustment of this marital property, the court must attach a value to options as of the date of the decree, *see Nisos,* 60 Md.App. at 381–85, 483 A.2d 97. That value may be determined by taking into consideration the market value of shares of Network stock as of the time of that decree, and the cost to the appellee of exercising the options. The court may, then, pursuant to the third step of the process, determine a percentage by which the profits should be divided if, as and when the options are exercised. Under such an approach to the equitable allocation of this marital property, the appellee is under no compulsion to exercise his options. At the same time, however, the appellant's equitable interest in the options, if exercised, is protected. We believe this approach fairly implements the process of adjusting the equities between the parties with respect to marital property as mandated by the Act.

For these reasons, we hold that the trial court was clearly erroneous in its conclusion that the stock options were valueless and in failing to include them in its determination of the marital property. We will thus remand this case in order that the court may make appropriate findings of fact with respect to the valuation of those assets, and make such adjustment to the monetary award as it deems equitable.

B. The Partnership Loan

■ The appellant challenges the trial court's determination that a loan in the amount of $32,073.00, made by the appellee to PBM Investments, a partnership in which the appellee was a partner has "little or no value." She argues that this factual finding was mere speculation on the part of the trial court and unsupported by the facts. We disagree.

The managing partner of PBM Investments, called as a witness by the appellant, testified that the partnership is insolvent and that in his opinion it was "very questionable

whether this money could ever be repaid." Since there was evidence to support the court's finding of fact that the loan was valueless, we cannot say that this factual determination is clearly erroneous. Md.Rule 1086.

C. Furniture and Appliances

 The appellant alleges as "an oversight" the omission from the list of marital assets items of furniture and appliances purchased by the appellee for his home in Vienna, Virginia. Mrs. Green refers us to no evidence presented below as to the identity and value of those items. It is the obligation of the party asserting a marital property interest in specific property to produce evidence as to the identity and value of that property. *See Sharp v. Sharp,* 58 Md.App. 386, 398, 473 A.2d 499 (1984). The appellant failed to present the court with evidence of the identity and value of various items. The trial court was therefore correct in omitting the items of furniture and appliances, if any, from its determination of the marital property.

D. Funds Removed From the Joint Account

 As recited above, in November, 1982, Mr. Green withdrew $20,000 from the parties' joint account and placed those funds in an individual account. This was done without Mrs. Green's knowledge. The appellee testified that he used those funds to pay alimony and child support. The trial court found as a fact that the appellee did not squander the funds. The record discloses evidence in support of this finding, with no evidence proffered by the appellant to the contrary. Because the $20,000 was no longer owned by the parties at the time of the trial, nor had it been "intentionally dissipated in order to avoid inclusion of that property towards consideration of a monetary award...." *Sharp,* 58 Md.App. at 399, 473 A.2d 499, the court did not err in refusing to designate that cash as marital property. Md.Rule 1086.

**140**

II. *The Date of the Marital Property Valuation*

Mrs. Green next contends that the trial court erred in valuing the marital assets as of the close of testimony on March 16, 1984, rather than on July 26, 1984, the date of the divorce decree. She cites in support of her contention Maryland Rule S74(c), as well as this Court's recent decision in *Dobbyn v. Dobbyn,* 57 Md.App. 662, 471 A.2d 1068 (1984).

Rule S74(c) provides:

In an action for divorce, annulment, or alimony in which the testimony has been concluded for more than 90 days without entry of a final decree, a final decree may not be entered until supported by additional testimony justifying the conclusion that there has been no substantial change since the prior testimony was concluded.

Mrs. Green argues that this rule precludes the trial judge from issuing a decree which has incorporated within it a monetary award based upon "stale" testimony. Her reliance upon rule S74(c) is misplaced. The rule is designed to prevent the granting of a divorce on grounds established by stale testimony. There is nothing in the rule's language that warrants its interpretation as governing valuation of marital property. We decline to impose such an interpretation upon it.

In *Dobbyn* we said that marital property is to be valued as of the date of the decree of absolute divorce based upon the evidence produced at trial. We also said that in the absence of an agreement the trial court, if additional time is needed for determining the value of the marital property, may reserve in the decree an additional 90 days under § 8–203(a)(2). The appellant interprets *Dobbyn* to require that there be no delay whatsoever between the presentation of testimony and the judgment of divorce which embodies the marital award. Such a reading of our holding in *Dobbyn* is highly impractical. Most applications of the Marital Property Act to the evidence presented at trial preclude an immediate decision by the court at the close of the evidence. We will not, nor should we, encour-

age hasty decision making in such cases. On the other hand, unreasonable delays between the close of the evidence and the rendering of the judgment may in some cases cause distortion in the valuation of certain highly volatile marital property, resulting in prejudice to one of the parties. Although we need not decide here whether the four month delay caused prejudice to the appellant since this case will be remanded for a redetermination of the monetary award, we point out that equity requires that reasonable efforts be made to ensure that valuations of marital property approximate the date of a judgment of divorce which includes a monetary award.

### III. *Valuation of the Marital Property*

In addition to the issue just discussed, Mrs. Green has raised a myriad of objections to the factual findings made by the trial court in valuing certain of the marital property. We will comment briefly upon each of these objections.

### A. The Partnerships

In valuing the appellee's interest in two real estate investment partnerships, PBM Investments and BERG Properties, the trial court relied upon evidence presented by the appellant's witness, Peter Eckstrand, the managing partner of the partnerships. He testified from the records of these enterprises that PBM was insolvent, *i.e.*, its liabilities exceeded its assets by $135,267, and that BERG had a net worth of $52,226. The appellee held a 35% interest in PBM and a 22% interest in BERG. This being the only evidence as to the value of this marital property, the court placed a value of $11,490 on the interest in BERG. Instead of valuing the appellee's interest in the insolvent enterprise, PBM, at zero, however, the court placed a negative value of $15,271 on it. This resulted in reducing the aggregate value of the marital property titled in the appellee's name by that amount. This calculation was erroneous. In the second of the three step process employed in arriving at the monetary award, *i.e.*, the valuation of marital property, the

court must value separately each item of marital property. There is no authority for the deduction of the loss incurred by a spouse in a bad investment from the value of the other marital property titled in his name. On remand the appellee's partnership interest in PBM should be valued at zero.

 Finally, although the witness mentioned that the properties purchased by the partnerships were expected to appreciate eventually, and that in the interim the investors were able to take short term tax write-offs, this evidence is speculative and properly was not considered by the court in valuing the properties as of the time of the divorce. There is nothing in the record to indicate to us that the trial court was clearly erroneous in relying upon Mr. Eckstrand's assessment of the value of the partnerships. Md.Rule 1086.

B. The House in Vienna, Virginia

On July 26, 1983 Mr. Green settled on his purchase of the Vienna, Virginia home for $257,500. He obtained a purchase money mortgage loan in the amount of $150,000 and paid $113,434 in cash at the settlement on his purchase. Closing costs in the amount of $5,934 accounted for the difference between the purchase price and the amount charged Mr. Green at settlement. The only evidence as to the value of this marital property at the time of trial was the settlement sheet prepared at the closing. In valuing this marital property the court disregarded the amount Mr. Green paid in closing costs and fixed the value at $107,500, the difference between the purchase price and the purchase money mortgage lien placed on this property on July 26, 1983.

 Mrs. Green claims that the valuation should include the amount paid by Mr. Green for closing costs at the settlement. Those costs in the amount of $5,934 included the typical expenses incurred in the transfer of residential real estate: a loan origination fee and loan application fee to the mortgagee, expenses related to the title transfer including a premium for title insurance, charges by the

state and local governments for recording the conveyances and taxes in the transfer, a survey fee, a charge for termite inspection, an escrow deposit with the mortgagee for antici- pated real estate taxes, interest on the mortgage loan for the period from the date of settlement until the first regu- lar mortgage payment was due, and an adjustment to the seller for prepaid fuel costs. The court apparently conclud- ed that none of those expenses increased the value of the property which had been purchased for $257,500. Although it is possible that the value of Mr. Green's equity in the asset increased between July 26, 1983 and the time of trial, there was no evidence presented to the trial court of any such appreciation. *Sharp,* 58 Md.App. at 398, 473 A.2d 499. Consequently, the court was not clearly erroneous in valu- ing Mr. Green's equity in the Vienna home based upon the only evidence submitted to it. Md.Rule 1086.

Mrs. Green also contends that the trial court erred in failing to augment the value of this marital property to the tune of approximately $1,000 paid by Mr. Green for landscaping when he took possession of the home after July 26, 1983. There was no evidence that this expenditure increased the value of the property as of the time of its valuation at trial, nor are we furnished any description of the "landscaping" which was undertaken. The court did not err in omitting this expense item when valuing this marital property. Md.Rule 1086.

C. The College Park Condominium

The appellee purchased this property for $55,550 when he left the marital home. As was the case with the Vienna home just discussed, the only evidence of the value of this item of marital property at the time of trial was the settlement sheet prepared at the closing of this transaction on September 9, 1982. It showed that after making a purchase money mortgage loan the appellee paid $13,005 in cash to complete the transaction ($2,005 of which represent- ed typical closing costs). In valuing Mr. Green's equity in this real estate as marital property, the court relying on the

only evidence presented to it fixed that value at the amount of the cash contribution made by him toward the purchase price, $11,000. For the reasons just stated, this was not clearly erroneous. Md.Rule 1086.

### D. The BMW Automobile

 The appellant argues that in valuing the BMW purchased by the appellee shortly after May 12, 1983 the court failed to consider undisputed evidence that in addition to a $5,600 cash payment, the appellee received a $1,200 trade-in on a 1976 Chevrolet, which added to his equity in the BMW. This was the only evidence of the value of the BMW automobile at the time of trial. Consequently, this marital property should be valued at $6,800 when the court on remand reviews the monetary award.

### E. Life Insurance

Mrs. Green also challenges the value attributed to Mr. Green's life insurance. The court received contradictory evidence from the parties as to that value. The court valued the policy at $2,025, as opposed to $11,000, as suggested by Mrs. Green. It is clear to us upon review of the trial court's memorandum opinion that the court weighed the evidence presented in ascertaining the appropriate value, and we do not find that determination to be clearly erroneous. Md.Rule 1086.

### IV. *Deductions from the Value of Marital Property*

In valuing the marital property for the purpose of deciding upon a monetary award, the court deducted the following amounts from the total value it placed on the marital property:

a) Balance due on debt incurred by Mr. Green to lend $32,073 to the partnership, PBM Investments.[4] $7,500

---

**4.** See our discussion in section I.B. of this opinion, *supra.*

b) Federal and State income taxes due for the year 1983 attributable to Mr. Green's capital gain on the sale of Network Systems stock, the proceeds of which sale were used in acquiring the Vienna, Virginia home. $23,000

c) Additional Federal and State taxes due by Mr. Green on his 1983 income. 8,600

TOTAL $39,100

Mrs. Green complains that such deductions from the value of the marital property were unwarranted. We agree.

In *Schweizer v. Schweizer, supra,* the Court of Appeals, in a case of first impression under the Marital Property Act, determined the proper method of treating the debts of the parties to divorce litigation with respect to formulating a monetary award. Chief Judge Murphy for the Court, after discussing the three steps process by which a monetary award is reached, reasoned:

> In determining the amount and method of payment of an award, the court is obliged to consider each of ten specified factors. The third factor is "the economic circumstances of each party at the time the award is to be made" and the tenth is "any other factor that the court considers necessary or appropriate to consider in order to arrive at a fair and equitable monetary award." § 8–205(a)(1) through (10).

301 Md. at 630, 484 A.2d 267.

> What constitutes "marital property" under § 8–201(e) is clearly "not dependent upon the legalistic concept of title." *Harper, supra,* 294 Md. at 78, 448 A.2d 916. Nor does a determination of what constitutes marital property depend upon the factors enumerated in § 8–205(a). Those factors come into play only with respect to the amount of the award and the method of its payment. What property is marital property and the value of that property must be determined before that step in the

scheme is reached. *Harper, supra,* 294 Md. at 79–80, 448 A.2d 916.

301 Md. at 630–31, 484 A.2d 267.

*Harper* teaches that a "marital debt" is a debt which is directly traceable to the acquisition of marital property. Conversely, a "nonmarital debt" is a debt which is not directly traceable to the acquisition of marital property. That part of marital property which is represented by an outstanding marital debt has not been "acquired" for the purpose of an equitable distribution by way of a monetary award. Therefore, the value of that marital property is adjusted downward by the amount of the marital debt. That is to say, a marital debt is considered under the second step of the process followed in reaching a monetary award, namely the valuation of marital property.

A nonmarital debt may not serve to reduce the value of marital property. It has no function in the second step of the process. But it may be taken into consideration in the third step of the process—the determination of the amount and method of payment of the award. The amount outstanding on a nonmarital debt of a party clearly reflects on that party's economic circumstances at the time the award is to be made. § 8–205(a)(3).

301 Md. at 636–37, 484 A.2d 267.

█ Under this rationale we conclude that the debt incurred by Mr. Green in order to raise money to lend to the partnership, PBM Investments, is directly traceable to the acquisition of the $32,073 note payable to Mr. Green by PBM Investments which the court found to be marital property. Therefore, it would have been proper to adjust downward the value of *that marital property*, that is, the note payable to Mr. Green, by the amount of *that marital debt*. But since that marital property was found by the court to be valueless, a finding which we have affirmed, it was improper to deduct *that marital debt* from *other marital property* in the second step of the process followed

to reach the monetary award. The court on remand may consider this debt in the third step of the process—the determination of the amount and method of payment of the monetary award. *Schweizer*, 301 Md. at 636, 484 A.2d 267.

■ We next apply *Schweizer* to the income tax due by Mr. Green on the capital gain he realized in converting a portion of his Network Systems stock into equity in his Vienna, Virginia home. Was that debt directly traceable to the acquisition of the Vienna home and therefore to be treated as a marital debt? We do not think so. While the tax consequences of capital transactions involving marital property are incidental to the acquisition of the marital property being valued under the second step of the process of formulating a monetary award, it cannot be said that a debt thus incurred is *directly traceable* to the acquisition of that property. Mr. Green's tax liability certainly did not constitute a contribution to the purchase price of the Vienna home. Similarly, in *Gravenstine v. Gravenstine,* 58 Md. App. 158, 171, 472 A.2d 1001 (1984), we held that real property taxes paid on nonmarital property owned by the husband from the joint funds of the parties did not constitute a contribution by the wife to the acquisition of that nonmarital property. Judge Alpert, for this court, explained:

Appellant posits that the property was fully "acquired prior to marriage" and thus nonmarital property. Section 3–6A–01(e) [of the Courts and Judicial Proceedings Article. (now § 8–201(e) of the Family Law Article) ]. He further asserts that "in no sense was the property ... 'purchased and paid for' either in whole or in part during the marriage." Appellee replies that the New Jersey land was "part marital property" since she contributed to the payment of taxes.

Resolution of this issue requires scrutiny of the word "acquired" as used in Section 3–6A–01(e). As previously explained the Court of Appeals has defined the term as "the on-going process of making payment for property." *Harper, supra* [294 Md.] at 80, 448 A.2d 916. We hold

under the facts of this case that the payment of taxes is not a part of the ongoing process of paying for property fully purchased prior to the marriage. Property tax is the "charge on the *owner* of a property by reason of his ownership alone without regard to any use that might be made of it." *Weaver v. Prince George's Co.*, 281 Md. 349, 357, 379 A.2d 399 (1977) (emphasis added) (and cases cited therein). "A tax on the mere right to own or have property is a property tax." *Id.* (emphasis added). Simply stated, payment of property tax does not involve the acquisition of land. We do not believe that the legislature intended that the joint payment of a tax incident to ownership of property would change the characterization of nonmarital to marital property.

Therefore, consideration of this *nonmarital debt* should be deferred by the court on remand to the third step of the monetary award process.

■ Finally, the debt of Mr. Green for additional Federal and State tax due on his 1983 income clearly is not directly traceable to his acquisition of marital property and should have played no part in the valuation of marital property in the second step of the process. Again, this *nonmarital* debt may be considered by the court on remand in formulating the amount and method of payment of the monetary award.

## V. *The Monetary Award*

■ The appellant challenges two aspects of the court's formulation of the monetary award. She argues first that the court was clearly erroneous in concluding that the parties were entitled to share equally in the marital property. She claims that the parties' relative economic situations and the circumstances of their estrangement dictate a 60–40 split in her favor, rather than a 50–50 split. We disagree. The evidence produced at trial regarding the factors required to be considered in determining a marital award set forth in § 8–205(a)(1)–(10) supports the court's determina-

tion that an equal distribution of the marital assets was an appropriate "adjustment of the equities and rights of the parties." Section 8–205(a). We thus affirm that aspect of the monetary award. Rule 1086.

■ The appellant argues next that the court was not justified in reducing the value of the marital property by 25 percent (approximately $100,000) prior to making the award. The court explained this deduction thus:

> The Court, in reaching an equitable property disposition and having considered all of those criteria as set forth in the Marital Property Act, is of the opinion that in order to treat the parties equitably, that the value of the property acquired shall be distributed equally. However, the Court is aware that in order to effect a transfer to satisfy the monetary award rendered hereto, that it will be necessary for the [appellee] to create expenses that are beyond his control (capital gains taxes, stockbroker's fees, real estate broker's costs, attorney's fees, etc.). These liquidation expenses must be deducted from the $396,023.87 figure reached earlier. Under the Marital Property Act the property involved belongs to both parties and such expenses should also be borne equally by the parties. The Court shall therefore reduce this figure by 25% as capital gains and broker's commissions are usually quite high.

The appellant urges that the court lacked any factual basis for such an across the board deduction. We agree. We find no evidence presented by either party to demonstrate that the costs of liquidation would have approached $100,000. Indeed, any of several methods may be employed by the appellee to liquidate assets for the purpose of satisfying the monetary award, some less costly than others. On remand the court may under § 8–205(a)(3) and (10) weigh *evidence* of liquidation expenses to be incurred by the appellee in satisfying the monetary award when formulating the award and determining the method of its payment.

## VI. *The Costs of Repairing and Maintaining Marital Property*

Mrs. Green contends that she is entitled to a credit for expenditures made by her in the months following the separation of the parties for the purpose of repairing and maintaining the marital home and car.

After the parties separated on September 7, 1982, Mrs. Green and the minor children continued to occupy the marital home in Columbia. Likewise, she used the 1979 Datsun automobile jointly owned by the parties. At the beginning of the separation period, the parties continued to pool their resources and to pay all household expenses from their joint accounts, including the mortgage payments on the Columbia home and the repairs and maintenance costs for the marital home and 1979 Datsun. However, in November of 1982, the financial situation changed dramatically when Mr. Green withdrew $20,000 from the parties' joint account and restricted his contribution to the support of Mrs. Green and their children to $900 per month.

Mrs. Green filed suit for divorce and other relief on March 2, 1983, and on May 12, 1983, the court ordered Mr. Green to pay $1,400 per month to Mrs. Green in alimony *pendente lite* and $1,990 per month as *pendente lite* support for the parties' two children who were in the custody of Mrs. Green. By the same order Mrs. Green was granted sole use and possession of the marital home and the 1979 Datsun automobile.

During the entire period from September 7, 1982 until the court rendered its July 26, 1984 judgment, Mrs. Green had paid the monthly mortgage payments of $625 on the Columbia home and had incurred expenses for the maintenance and repairs of that home and of the 1979 Datsun. She now claims that the court failed to order Mr. Green to reimburse her for his share of these expenses as a co-tenant of the Columbia home and the Datsun automobile. She relies on the duty of contribution that generally applies between co-tenants of property where one co-tenant pays

the mortgage and other carrying charges on jointly owned property. *Crawford v. Crawford,* 293 Md. 307, 443 A.2d 599 (1982). That general rule, however, can be modified by agreement of the parties or where the court in a domestic dispute has made provision for the payment of such expenses of maintaining jointly owned property.

It would seem that for the period covered by the *pendente lite* order of May 12, 1983, the court contemplated that these payments by Mrs. Green were being contributed to by Mr. Green when he responded to his duty to pay monthly alimony and child support pending a final judgment. The record is silent, however, on the arrangements between Mr. and Mrs. Green between November 1982 and May 12, 1983. Since the court's memorandum opinion accompanying its final judgment makes no mention of this claim by Mrs. Green, we direct that the court resolve this dispute on remand.

### VII. *The Failure to Partition the Marital Assets*

█ The appellant next complains that the court abused its discretion by not acting upon her request for partition of certain jointly held marital assets, namely the Datsun automobile and the jointly held stocks. She argues that because of the court's nonaction, she is effectively precluded from making choices regarding her investments, and she is denied the benefits which flow from the individual ownership of those assets. As she concedes, § 8–202 allows the trial court the discretion to partition jointly owned assets. Because we do not find an abuse of this discretion, we uphold the court's decision not to act upon her request.

VIII. *The Constitutionality of Md. Code (1974, 1984 Repl. Vol.), §§ 3-6A-03 and 3-6A-04 of the Courts and Judicial Proceedings Article*

Mrs. Green asserts that former §§ 3-6A-03 and 3-6A-04,[5] which gave the court authority to partition jointly titled, but not individually titled property, violate the equal protection clause of the Fourteenth Amendment. As evidenced by subsection (b) of each of these sections, the court is expressly prohibited from transferring the ownership of personal or real property from one party to another. The appellate courts of Maryland have reiterated and enforced this prohibition. *Deering, supra; Harper, supra; Ward v. Ward,* 48 Md.App. 307, 426 A.2d 443 (1981).

Mrs. Green is apparently under the misimpression that because the trial court may determine that certain individually titled property is marital property subject to a monetary award as an adjustment of the equities and rights of the parties in that property, the court should be empowered to effect a change in title to that property. Classification of property as "marital" for the purpose of equitable adjustment has absolutely no effect upon *title* to that property. We perceive no merit in Mrs. Green's constitutional attack on this legislative design.

IX. *Ownership of the Chinese Vase*

The appellant also asserts that the court was clearly erroneous in finding that a chinese vase is the personal property of the appellee rather than marital property. After hearing conflicting evidence, the trial judge decided that the vase was a gift to the appellee from his aunt and was therefore excluded from the definition of marital property. § 8-201(e)(2)(ii). As we detect nothing in the record to indicate that his finding is clearly erroneous, we will not disturb that factual determination. Md.Rule 1086.

X. *Alimony*

Mrs. Green also complains about the trial court's alimony award of $200 per week for a period not to exceed three

---

**5.** These sections have been repealed and replaced by § 8-202 of the Family Law Article containing modified language. See Revisor's Note to § 8-202.

years. She contends that the circumstances are such as to entitle her to an award of alimony for an indefinite period. § 11–106. Since this case is being remanded for further hearing on issues which will result in an increase in the monetary award, thus requiring a reconsideration of the alimony award, *see* § 11–106(b)(11)(ii), we will not address the amount of the present alimony award. We have, however, reviewed the evidence bearing upon the court's decision to deny indefinite alimony and affirm its factual determination under § 11–106(c). Md.Rule 1086. The trial judge explained his decision thus:

> The [appellant] argues for permanent alimony ..., maintaining that the respective standards of living of the parties will be unconscionably disparate. This Court does not agree. When Mrs. Green returns to full time work she will be earning around $30,000 per year. The Court believes that an additional $13,400 must be added to this amount, said figure representing the investment income producing value of the wife's monetary award, based upon a minimal ten per cent (10%) straight interest rate. Thus, the Court believes that the wife is capable of producing a minimum income of $43,400 per year. For the above reasons, this Court will award alimony in the amount of $200 per week for a period not to exceed three years.

## XI. *Child Support*

The appellant challenges the award of $400 per week in child support, a reduction of $270.00 per month from the *pendente lite* award of $1,990 per month. Without enumerating specifics, we conclude that from the evidence presented by the parties regarding their relative financial positions and the needs of the children, the court's award of $400 per week is well within the range of his discretion. We will therefore not disturb that award. Md. Rule 1086.

### XII. *Attorney's Fees*

Finally, Mrs. Green claims that in view of her request for a $30,000 contribution to her attorney's fees and costs, the court's award of $5,000 constituted an abuse of discretion. While it is true that during this divorce litigation the parties incurred great expense in attorney's fees and other costs, it is evident that the court in concluding that the parties were entitled to share equally in their marital property reasoned that the parties were likewise equally capable of assuming the bulk of the expense of this proceeding to terminate their marriage and to resolve the financial consequences thereof. We perceive no abuse of the court's discretion under § 11–110 and § 12–101 in fixing this amount.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE BORNE EQUALLY BY THE APPELLANT AND THE APPELLEE.