**Valerie Sue CHARRIERE, Appellant,**

v.

**Charles Lance CHARRIERE, Appellee.**

**No. 05–97–00434–CV.**

Court of Appeals of Texas, Dallas.

Oct. 7, 1999.

---

1. *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963).

P. Michael Jung, Strasburg & Price, L.L.P., Dallas, for appellant.

John H. Withers, Sr., Whithers & Withers, P.C., Dallas, for appellee.

Before Justices OVARD, WRIGHT, and BRIDGES.

## OPINION

DAVID L. BRIDGES, Justice.

In this divorce action, Valerie Sue Charriere appeals a judgment awarding her ex-husband, Charles Lance Charriere, a portion of certain stock options she received as part of her employment. In a single point of error, Valerie contends the award was improper because the value of the options is dependent on her post-divorce employment. For the reasons set forth below, we affirm the trial court's judgment.

## BACKGROUND

Valerie and Charles were married in January 1983. In October 1988, Valerie began working for CBI Laboratories. Five years later, CBI was purchased by Thermolase Inc. and, at that time, Valerie was granted options to purchase 80,000 shares of Thermolase stock at $2.50 a share.[1] According to the stock option agreement, the options were "exercisable [at] any time"; however, the stock was subject to various transfer restrictions that prohibited Valerie from selling it without the company's consent. The transfer restrictions lapsed gradually over time (at the rate of ten percent per year) and, as a result, acted as an incentive for Valerie to remain employed with the company.[2] In

---

1. Although Valerie was originally granted options to purchase only 20,000 shares at $10.00 per share, the stock split twice and, as a result, Valerie ended up with options to purchase 80,000 shares at $2.50 per share.

2. Under the agreement, if Valerie terminated her employment with the company, two things would happen: (1) she would have three months from the date of her termination to purchase any options that were no longer subject to the transfer restrictions; and (2)

December 1994, the restrictions lapsed on the first ten percent of stock, and Valerie exercised her option to purchase the entire 8,000 shares. She later sold the shares on the open market for a profit of approximately $127,000.

In February 1995, Charles filed for divorce. Shortly thereafter, Valerie counter-sued for divorce. The parties could not agree on the division of marital property (in particular, the division of Valerie's stock options), and the case was therefore submitted to the trial court in March 1996. At that time, 64,000 shares remained subject to the transfer restrictions.[3] Following the hearing, the trial court (1) determined that Valerie's options to purchase those shares were community property, and (2) divided them equally between Valerie and Charles. After the trial court entered judgment, Valerie brought this limited appeal.

## STOCK OPTIONS

 In a single point of error with multiple subpoints, Valerie contends the trial court erred in awarding Charles one-half of the 64,000 stock options that remained subject to the transfer restrictions at the time of trial. According to Valerie, this award was improper because (1) the options could not be classified as community property; and (2) their value, if any, was dependent on her post-divorce activity (i.e., employment with the company).[4] After reviewing the record in this cause as well as relevant caselaw, we cannot agree with Valerie.

In *Demler v. Demler*, 836 S.W.2d 696 (Tex.App.—Dallas 1992, no writ), this Court recognized that stock options earned during marriage may be community property subject to a "just and right" division upon divorce. *See id.* at 699. However, in *Demler*, this Court was not faced with the precise issue presented here; i.e., whether stock options that depend for their value, at least in part, on one spouse's post-divorce employment are still community assets subject to a "just and right" division upon divorce. Nevertheless, after reviewing the record in this cause, we conclude that they are.

We begin our analysis by reference to section 3.003(a) of the Texas Family Code.[5]

---

her option to purchase those shares still subject to the transfer restrictions would terminate immediately. If Valerie had previously exercised her option to purchase any shares still subject to the transfer restrictions, the company had the right to "repurchase all or any portion" of those options at Valerie's cost.

3. At the time of trial, the transfer restrictions on 16,000 shares of stock had lapsed and, although Valerie had previously purchased and sold the first 8,000 shares, she had not by the time of trial exercised her option to purchase the second 8,000. Those shares were ultimately awarded to Charles in the divorce, and Valerie has not complained about that award on appeal.

4. Valerie's point of error breaks down into two basic categories—complaints about the trial court's fact findings and complaints about its legal conclusions. The first category complains that the evidence is factually and legally insufficient to support the findings that (1) all of Valerie's rights under the options accrued during marriage, (2) Valerie's options to purchase all 80,000 shares were earned entirely during marriage, (3) the options were granted in consideration of Valerie's past and present services, and (4) the options were granted to compensate Valerie for not having been offered options or shares of CBI in the past. As part of her sufficiency argument, Valerie also contends that the court's *failure to find* that Valerie's future services were considered in granting the stock options was either (1) erroneous as a matter of law, or (2) against the great weight and preponderance of the evidence. The second category of complaints involves the trial court's conclusions that (1) all 80,000 shares were community property, and (2) the options were not "divested" of their status as community property by the fact that Valerie's rights in the options were subject to "forfeiture" upon termination.

5. We recognize that the judgment in this case was signed before the effective date of section 3.003. However, because the repeal and recodification of that section resulted in no substantive change in the language of that section (or in the other sections relied on in this opinion), we refer to the current version of the statute for convenience.

That section requires us to presume that any property possessed by either spouse during or at the dissolution of marriage is community property. TEX.FAM. CODE ANN. § 3.003(a) (Vernon 1998); *see* TEX.FAM. CODE ANN. § 3.002 (Vernon 1998) (defining "community property" as property, other than separate property, acquired by either spouse during marriage). According to the code, this presumption can only be overcome by clear and convincing evidence. *Id.* § 3.003(b). In this case, the stock options were clearly granted to Valerie during the parties' marriage. Thus, under section 3.003, the options are presumptively community property absent clear and convincing evidence to the contrary. We conclude, after reviewing the record in this cause, that no such evidence exists.

The record in this case includes a copy of the stock option agreement between Thermolase and Valerie. Under that agreement, the options granted to Valerie were exercisable any time after the grant date and before the "option termination date." Thus, under the agreement, Valerie had the right to purchase all 80,000 shares of Thermolase stock during the parties' marriage. In addition, under the agreement, once Valerie exercised her option, she enjoyed "ownership of the shares," including the right to vote the shares and receive dividends. Thus, it appears that, under the agreement, the optioned shares (1) were available for purchase during the marriage; and (2) once purchased, included potentially valuable rights. Under these circumstances, we conclude (1) the options, which were acquired and exercisable during marriage, were community property subject to division as part of the parties' community estate; and (2) Valerie presented no clear and convincing evidence to the contrary.[6]

■ In Texas, a spouse is entitled to a division of property owned by the community at the time of divorce. *See Smith v. Smith,* 836 S.W.2d 688, 692 (Tex.App.—Houston [1st Dist.] 1992, no writ); *see also* TEX.FAM. CODE ANN. § 7.001 (Vernon 1998) (requiring trial court to divide estate in manner court deems "just and right"). In this case, there is no question that Valerie received the stock options during marriage, that she had the right to exercise them during marriage, and that the community therefore owned them at the time of divorce. Under these circumstances, we conclude the options were properly classified as community property and the trial court did not err in dividing them as part of the community estate.

We find support for our conclusion in a 1997 opinion issued by the San Antonio Court of Appeals. *See Bodin v. Bodin,* 955 S.W.2d 380 (Tex.App.—San Antonio 1997, no pet.). In that case, the trial court awarded Dollie Bodin an interest in certain stock options received by her ex-husband, Walter Bodin, as part of his employment. On appeal, the San Antonio court affirmed, concluding that because the options (1) were received during the parties' marriage, and (2) constituted a "contingent interest in property," they were a "community asset" that could properly be divided

---

6. We recognize that, to the extent the value of the options is dependent on Valerie's post-divorce employment, she can effectively control the value of those options to Charles (*i.e.,* she can terminate her employment and effectively deprive him—and herself—of any value those options would have had over time). However, the fact that the value associated with some or all of the options could be forfeited by the occurrence of certain contingencies (*i.e.,* Valerie's termination of employment with the company) does not divest the options of their status as community property. *See Busby v. Busby,* 457 S.W.2d 551, 553 (Tex.1970) (recognizing that portion of military retirement benefits could be community property even though any value associated with benefits could be forfeited if husband was dishonorably discharged from military); *Mora v. Mora,* 429 S.W.2d 660, 662 (Tex.Civ. App.—San Antonio 1968, writ dism'd) (noting that rights under military retirement plan were not divested of status as community property merely because rights could be forfeited if certain contingencies occurred); *see also Cearley v. Cearley,* 544 S.W.2d 661, 665 (Tex.1976).

as part of the community estate. *Id.* at 381. The court reached its decision despite the fact the options were (1) not exercisable at the time of divorce, and (2) contingent on Walter's continued post-divorce employment. *Id.*

We are presented with much the same situation here today. In this case, as in *Bodin,* the stock options were received by Valerie during the parties' marriage. Likewise, the value of the options is contingent, in large part, on Valerie's post-divorce employment. Even more persuasive in this case, however, is the fact that, unlike in *Bodin,* the options here *were* completely exercisable during the parties' marriage. Under these circumstances, we conclude, as the court did in *Bodin,* that the options were community assets that were divisible as part of the parties' community estate. *See Bodin,* 955 S.W.2d at 381; *see also Green v. Green,* 64 Md.App. 122, 494 A.2d 721, 728–29 (1984) (concluding stock options were marital property subject to division on divorce); *Smith v. Smith,* 682 S.W.2d 834, 836–37 (Mo.Ct. App.1984) (characterizing stock options as community property even though (1) they were not exercisable at time of trial, and (2) their exercise was contingent on husband's continued employment), *repudiated on other grounds by Gehm v. Gehm,* 707 S.W.2d 491, 495 (Mo.Ct.App.1986).

■ In reaching this decision, we necessarily reject Valerie's argument that classifying the options as community property was improper because the options had no value apart from her post-divorce personal services (due to the admittedly onerous transfer restrictions). Valerie cites no authority, and we have found none, for the proposition that the characterization of property as either community or separate is somehow dependent on the *value* of the property at the time of divorce.[7] To the contrary, in Texas, property is characterized as "separate" or "community" based on the *time* title to the property is acquired. *See Saldana v. Saldana,* 791 S.W.2d 316, 319 (Tex.App.—Corpus Christi 1990, no writ). The "inception of title" rule makes no mention of a property's *value* when determining its "community" or "separate" property status. Here, Valerie acquired title to the property at issue during her marriage. Thus, the property is presumptively community, regardless of whether the options were valuable at the time they were received. We reject Valerie's arguments to the contrary.[8]

■ We likewise reject Valerie's "alternative" suggestion that we analogize the stock options to retirement benefits and, as with retirement benefits, allocate them proportionally between the parties on a "time rule" basis. In our view, this analogy is unwarranted. This case involves a stock option plan, not retirement benefits. Unlike retirement benefits, the stock options in this case are not benefits earned over the entire period of Valerie's employment; to the contrary, *they have already*

---

7. Although Valerie cites "professional goodwill" and "professional degree" cases to show that certain "items" of property are not classified as community (even though acquired during marriage) because their "value" depends on post-divorce employment, we find these cases inapposite. *See Nail v. Nail,* 486 S.W.2d 761 (Tex.1972); *Guzman v. Guzman,* 827 S.W.2d 445 (Tex.App.—Corpus Christi), *writ denied,* 843 S.W.2d 486 (Tex.1992); *Keith v. Keith,* 763 S.W.2d 950 (Tex.App.—Fort Worth 1989, no writ); *Finn v. Finn,* 658 S.W.2d 735 (Tex.App.—Dallas 1983, writ ref'd n.r.e.); *Stephens v. Stephens,* 625 S.W.2d 428 (Tex.App.—Fort Worth 1981, no writ); *Frausto v. Frausto,* 611 S.W.2d 656 (Tex.Civ.App.— San Antonio 1980, writ dism'd). The options in this case are fundamentally different from "professional goodwill" and "professional degrees" (both of which are, at most, intangible pieces of "property") and we, therefore, do not consider these cases controlling.

8. To hold otherwise would require trial courts to engage in some type of "value analysis" when classifying property as either "community" or "separate." Not only is such an approach unsupported by any legal authority in this State, but it would, in our view, unnecessarily complicate this already difficult determination.

*been earned. See Smith,* 682 S.W.2d at 837. Because their value is fixed and cannot be changed except by market forces, we conclude (1) the options are distinguishable from retirement benefits, and (2) treating them the same would therefore be improper. *See id.*

For the reasons stated, we conclude the trial court did not err in dividing the 64,000 stock options as part of the parties' community estate. We overrule Valerie's sole point of error. We affirm the trial court's judgment.